**Mary Helen SEARS, Appellant,**

v.

**Robert GOTTSCHALK, Commissioner of Patents, Appellee.**

No. 73–1699.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1974.

Decided Aug. 14, 1974.

Edward S. Irons, Washington, D. C., for appellant.

Thomas G. Wilson, Atty., U. S. Dept. of Justice (Irving Jaffe, Acting Asst. Atty. Gen., Brian P. Gettings, U. S. Atty., Leonard Schaitman and Barbara L. Herwig, Attys., U. S. Dept. of Justice, on brief), for appellees.

Before WINTER, BUTZNER and FIELD, Circuit Judges.

WINTER, Circuit Judge:

Suing under the Freedom of Information Act, 5 U.S.C. § 552 (FOIA), plaintiff, a patent attorney, sought to enjoin defendant from withholding "abandoned U. S. patent applications" from her and the public. The suit was instituted because plaintiff's request to make available to her "all existing abandoned U.S. patent applications" had been denied by the defendant on the ground that the matters sought were barred from disclosure by 35 U.S.C. § 122 (1970). The district court concluded that the documents sought were exempt from compelled disclosure on the alternate grounds that they were "specifically exempted from disclosure by statute," as provided in 5 U.S.C. § 552(b)(3), and that they contained "trade secrets and commercial or financial information obtained from a person and privileged or confidential," as provided in 5 U.S.C. § 552(b)(4). We conclude that the district court was correct in its conclusion that abandoned patent applications are statutorily exempt from the necessity of disclosure under FOIA. We perceive no constitutional obstacle to this conclusion, and we do not think that a three-judge court was required in order to reach it. We affirm the order of the district court.

## I.

A patent application is, of course, an application for the grant of a patent under the provisions of 35 U.S.C. § 1 *et seq.* Patent applications fall into three categories: (a) those in the process of consideration by the patent office— "pending applications," (b) those denied by the patent office as to which the applicant has not sought judicial review,[1] and those abandoned by formal relinquishment[2] or mere default,[3] before the patent office has taken final action —"abandoned applications," and (c) applications which have ripened into the grant of a patent—"matured or granted applications." Plaintiff makes no claim that "pending applications" should be available for public inspection; indeed, she readily concedes their confidentiality under 35 U.S.C. § 122. When applications mature into the grant of a patent, a copy of the specification and drawing of the patent are annexed to the patent, 35 U.S.C. § 154, and they are open to the public for inspection and copying.[4] Thus, plaintiff's request was to have access to and examine only those falling into the second category— "abandoned applications," and only those are the subject of suit.

The patent office denies access to or inspection of both pending applications and abandoned applications. As to the latter, indices of abandoned applications are maintained, and the applications themselves or a microfilm thereof have been preserved. While the record does not reflect the fact with certainty, it appears that most, if not all, abandoned applications are extant, although, as might be expected, not all could be produced without some inconvenience and expense.[5] The record indicates that some portions of abandoned applications contain trade secrets. But it is argued

---

1. The right to judicial review of the denial of a patent is found in 35 U.S.C. §§ 141 and 145.

2. 37 C.F.R. §§ 1.138, 1.139.

3. 35 U.S.C. § 133; 37 C.F.R. § 1.135. Patent applications abandoned by default may be revived, however, by a verified statement satisfying the Commissioner of Patents that "the delay was unavoidable." 37 C.F.R. § 1.137.

4. By 35 U.S.C. § 112, the "specification" of a patent application is "a written description of the invention, and of the manner and process of making and using it . . .

and [it] shall set forth the best mode contemplated by the inventor of carrying out his invention." The completeness of the disclosure is thus manifest.

5. 5 U.S.C. § 552(a)(3) permits an agency to exact "fees to the extent authorized by statute" as a condition precedent to making records promptly available to any person. In the instant case, it has been stipulated that plaintiff's request for inspection was "made in accordance with published rules stating the time, place, fees to the extent authorized by statute, and procedure to be followed" in compliance with § 552(a)(3).

ction to disclosure. We need not concern ourselves with this contention, however, because we do not reach the district court's alternative holding that the trade secret exemption of FOIA is applicable.

## II.

The legal dispute between the parties arises from two statutes. The first is FOIA, which requires each agency "on request for *identifiable records* . . . [to] make the records promptly available to any person." (Emphasis added.) 5 U.S.C. § 552(a)(3). Among the exceptions to this mandate are records "specifically exempted from disclosure by statute," § 552(b)(3). The second statute from which the dispute arises is the provision of the patent title, 35 U.S.C. § 122, which states:

> Applications for patents shall be kept in confidence by the Patent Office and no information concerning the same given without authority of the applicant or owner unless necessary to carry out the provisions of any Act of Congress or in such special circumstances as may be determined by the Commissioner.

On the merits of the ultimate question, plaintiff contends that the § 122 rule of confidentiality applies only to pending applications and not to abandoned applications, and therefore the § 552(b)(3) exception to the mandate of § 552(a)(3) does not apply. Preliminarily, she asserts that § 122 is not the type of statute to qualify for the § 552(b)(3) exception, because it authorizes the Commissioner to disclose matters required to be kept confidential if he determines that disclosure is justified.[6]

Defendant argues that plaintiff's request to inspect "all existing abandoned U.S. patent applications" is not a request for "identifiable records" within the meaning of § 552(a)(3), and plaintiff's suit should be dismissed on that basis. On the merits, defendant contends that the rule of confidentiality embodied in § 122 applies to abandoned applications as well as pending applications, and that § 122 is a statute of the kind contemplated by § 552(b)(3), so that plaintiff's request is defeated by § 552(b)(3).

## III.

We are not persuaded by defendant's argument that plaintiff's request to inspect was so lacking in specificity that the records sought were not "identifiable records" within the meaning of § 552(a)(3). The purpose of the "identifiability" requirement is to generate a "reasonable description enabling the Government employee to locate the requested records." Bristol-Myers Co. v. F. T. C., 138 U.S.App.D.C. 22, 424 F. 2d 935, 938 (1970) (quoting S.Rept.No. 813, 89th Cong., 1st Sess. at 8). Although plaintiff's request was far reaching,[7] that purpose was met. Aside from the sheer bulk of the material to which access was sought and the accompanying expense and inconvenience of making it available for inspection, defendant makes no claim that he does not know what plaintiff wishes to see or where to locate it. The case is thus different from Irons v. Schuyler, 151 U.S. App.D.C. 23, 465 F.2d 608 (1972), where access was sought to "all unpublished manuscript decisions of the Patent Office" and where it appeared that there were more than 4,780,000 files, "any of which may contain one or more manuscript decisions." In that case, inspection was denied, but the decision turned on the difficulty of locating the requested records rather than the categorical

---

6. Plaintiff makes other contentions which we need not describe, discuss or decide in the view that we take of a proper disposition of the case.

7. See the factual statements in Irons v. Schuyler, 151 U.S.App.D.C. 23, 465 F.2d 608, 611 (1972), cert. den., 409 U.S. 1076, 93 S.Ct. 682, 34 L.Ed.2d 664 (1972).

nature of the request; we, therefore, do not deem it controlling here. If otherwise locatable, the rule in this circuit is that equitable considerations of the costs, in time and money, of making records available for examination do not supply an excuse for non-production. Ethyl Corp. v. Environmental Protection Agency, 478 F.2d 47 (4 Cir. 1973); Wellford v. Hardin, 315 F.Supp. 175 (D.Md.1970), aff'd 444 F.2d 21 (4 Cir. 1971). See also National Cable Television Ass'n, Inc. v. F. C. C., 156 U.S.App. D.C. 91, 479 F.2d 183 (1973); Getman v. N. L. R. B., 146 U.S.App.D.C. 209, 450 F.2d 670 (1971).

## IV.

Nor do we see merit in plaintiff's argument that, since the Commissioner may disclose patent applications "in such special circumstances as may be determined by the Commissioner," § 122 is not the sort of statute contemplated by the (b)(3) exception to the disclosure requirement of FOIA.[8] The question of whether a statute which confers discretion to determine whether to make records of his agency publicly available "specifically exempts from disclosure" the material over which the administrator has discretion is not without difficulty. Professor Davis resolves this question in favor of the availability of the exception.[9] He reasons that the specific intent of Congress to maintain in secret that which the administrator determines should be so maintained should not be overridden by the more general provisions of the FOIA.

We are aware of only two cases which bear directly on this question. In Evans v. Dept. of Trans., 446 F.2d 821 (5 Cir. 1971), the Fifth Circuit, in an alternative holding said that the (b)(3) exception was available for matters which a statute authorized an administrator to withhold if he found that

disclosure of such information would adversely affect the interests of such person [he who provided the information to the administrator] and is not required in the interest of the public.[10]

It is noteworthy that the Congress had provided some standards for the exercise of discretion in the statute under consideration in *Evans*.

A recent Third Circuit case, drawn to our attention by post-argument memoranda, emphasizes the absence of statutory guidelines for the exercise of discretion in holding that 42 U.S.C. § 1306(a), which reads

No disclosure of any . . . report . . . obtained at any time by the Secretary . . . or employee of the Department . . . in the course of discharging their respective duties under this chapter [the chapter on social security] . . . shall be made except as the Secretary . . . may by regulations prescribe . . .,

will not support the (b)(3) exception. Stretch v. Weinberger, 495 F.2d 639, (3 Cir., 1974). However, in *Stretch*, the court placed equal emphasis on the lack of specificity in the phrase "any record"— the definition of the matters to be kept confidential within the Secretary's discretion. The court stated the rule to be that

"matters are . . . specifically exempted from disclosure by statute" only if a statute *either* identifies some class or category of items that Congress considers appropriate for exemption *or*, at least, sets out legislatively prescribed standards or guidelines that the Secretary must follow in determining what matter shall be exempted from disclosure. (Emphasis added).[11]

---

8. If this argument prevails, FOIA plaintiffs will be able to compel public disclosure of all applications both pending and abandoned, notwithstanding plaintiff's concession that pending applications are protected from disclosure.

9. Davis, Administrative Law, § 3A.18 (1970 Supp.).

10. 49 U.S.C. § 1504 (1970).

11. At 640.

From this language, we infer that the Third Circuit would be satisfied that the phrase "applications for patents" sufficiently identifies the class of items Congress deems appropriate for exemption so that the absence of guidelines in § 122 for the exercise of the Commissioner's discretion would not be determinative.

■■■ Plaintiff, of course, argues that, where the administrator has unbridled discretion to disclose or not disclose a class of items, the (b)(3) exception should be unavailable regardless of how carefully such class is identified. But we are persuaded of the correctness of the Third Circuit view. The presence of guidelines for the exercise of discretion to withhold or disclose qualifies a statute to be the basis of a (b)(3) exception. The phrase "such special circumstances as may be determined by the Commissioner" is such a standard. It incorporates the then existing administrative standards for disclosure of patent applications embodied in Rule 14(a) and (b).[12] In turn, the standards found in Rule 14 are sufficiently specific that they meet the "specifically exempting" requirement of the (b)(3) exception. Since the legislative history is clear that § 122 was intended to codify the Patent Office rule of secrecy, whatever it may have been, we see no insuperable barrier to reading the guidelines for the exercise of the Commissioner's discretion to disclose back into the statute. We therefore hold that § 122 "specifically exempts" applications for patents from disclosure within the meaning of § 552(b)(3).

## V.

Thus, we are brought to the ultimate question of how, in this case, to apply 5 U.S.C. § 552(a)(3) in the light of 5 U.S.C. § 552(b)(3) and 35 U.S.C. § 122. We begin by recognizing that in Kewanee Oil Company v. Bicron Corporation, 416 U.S. 470, 485, 94 S.Ct. 1879, 1888,

40 L.Ed.2d 315 (1974), the Supreme Court has recently stated:

> The mere filing of applications doomed to be turned down by the Patent Office will bring forth no new public knowledge or enlightenment, since under federal statute and regulation patent applications and abandoned patent applications are held by the Patent Office in confidence and are not open to public inspection. 35 U.S.C. § 122; 37 C.F.R. § 1.14(b).

While at first blush this sentence may seem to decide the instant case, we are persuaded that it has not, and that the issue is before us for initial adjudication.

*Kewanee* was a diversity action in which a manufacturer of synthetic crystals sought injunctive relief and damages under Ohio law against certain former employees and the corporation that they caused to be organized on the ground that defendants had misappropriated plaintiff's trade secrets. The district court, applying Ohio law, granted relief, but the Court of Appeals reversed on the ground that Ohio's trade secret law conflicted with, and hence was preempted by, the federal patent laws. The Supreme Court reversed the judgment of the Court of Appeals and reinstated that of the district court. The principal discussion in its opinion was about whether there was a conflict between the provisions and purposes of the federal patent laws and the Ohio law of trade secrets. It was with regard to a trade secret known not to be patentable that the Supreme Court made the statement quoted to demonstrate that the Ohio law which protected such a trade secret did not conflict with federal patent law.

There is nothing in the opinion in *Kewanee* to indicate that the *legality* of suppressing all information contained in abandoned applications was either litigated or decided. The quoted statement appears to be nothing more than a factual recitation of the surface provisions

12.  37 C.F.R. § 114(a), (b).

of the existing statute and regulation. Indeed, the statement is not necessarily even one that § 122 prescribes a rule of confidence for abandoned patents. This is so because the statement speaks of both "patent applications" and "abandoned patent applications," citing § 122 and 37 C.F.R. § 1.14(b)—which relates only to abandoned patent applications—but *not* 37 C.F.R. § 1.14(a)—which relates to pending patent applications. It follows that the statement may be read to invoke only § 1.14(b) of the regulations, and *not* § 122 of the statute, as support for its comment about the confidentiality of abandoned patent applications. Hence, we feel free to deal with the case on the merits as presenting a question of first impression; and, as we will show, we conclude that the statement in *Kewanee* is indeed the law with respect to abandoned applications.

## VI.

In Ethyl Corp. v. Environmental Protection Agency, 478 F.2d 47, 48–49 (4 Cir. 1973), affirming our prior decision in Wellford v. Hardin, 444 F.2d 21, 25 (4 Cir. 1971), we said:

The Freedom of Information Act was intended to express in statutory form the firm obligation of governmental agencies to make disclosure to "any person" of identifiable information and facts in their possession, limited only by certain specific exemptions. Specifically, it denied the federal agency any right to "refuse disclosure of materials covered by the Act for any reason other than one contained in the exclusionary section of the legislation. The legislative history of the Act makes it clear that the obligation to produce thereby mandated is to be construed *broadly* and the exemptions from such obligation *narrowly*. In short, the Act makes disclosure the rule and secrecy the exception. (Emphasis in original.) [13]

This is the spirit in which we approach the main question and this is why, in order for a failure to disclose to be sustained under § 552(b)(3), there must be *strict* compliance with its requirement that a matter be *"specifically* exempted" from disclosure by statute.

The language in § 122 creating confidentiality speaks of "[a]pplications for patents." The language is broad enough to include all categories of applications —pending, abandoned and granted— [14] and that would appear to be the legislative intent of Congress. Especially is this so when the adjective of qualification—"pending"—could so easily have been employed had Congress intended the operative effect of § 122 to be limited to pending applications for patents as plaintiff contends. Moreover, the concept of an abandoned application for a patent is a flexible one. Both 35 U.S.C. § 133 and 37 C.F.R. § 1.137 permit the revival of an abandoned application under certain circumstances. Thus, what may be an abandoned application, which plaintiff claims the right to inspect, may subsequently resume being a pending application, which plaintiff concedes is immune to inspection. When an "abandoned" application does not necessarily remain abandoned, it is difficult to give the language of § 122 the discriminating effect urged by plaintiff.

Lest the language of § 122 be not itself sufficient "specifically" to clothe

---

13. *Ethyl Corp.* was decided after Environmental Protection Agency v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). That it is in accord with controlling precedents is demonstrated by the characterization in the later decision of Renegotiation Board v. Bannercraft Clothing Co., Inc., 415 U.S. 1, 19, 94 S.Ct. 1028, 1038, 39 L.Ed. 2d 123 (February 19, 1974)—"The broad language of the FOIA, with its obvious emphasis on disclosure and with its exemptions carefully delineated as exceptions . . ."— in reaching the holding that FOIA does not limit the inherent powers of an equity court to grant relief.

14. The disclosure of the essential portions of the applications for a patent when the patent is granted results from the provisions of 35 U.S.C. §§ 112 and 154 and not from the provisions of § 122.

abandoned patent applications with confidentiality, we turn to its legislative history. The enactment of § 122 was part of the overall revision and reenactment of the patent laws in 1952. Both the House and Senate reports state that "[s]ection 122 incorporates into the title the rule of secrecy of patent applications *which has existed in the Patent Office for generations.*" (Emphasis added.) H. Report No. 1923, 82d Cong., 2d Sess. at 7 (1952); S. Report No. 1979, 82d Cong. 2d Sess. at 6 (1952), U.S.Code Cong. & Admin.News, p. 2400. The fact is that, while the regulations of the Patent Office have spoken of pending and abandoned applications on a parity as to secrecy only since 1952, for *ninety* years prior thereto, and hence for the "generations" referred to in the legislative history of § 122, the practice of the Patent Office has been to treat them alike.

The text of the Patent Office rule in effect in 1952 (and also in effect at the present) is set forth in the margin.[15] It will be noted that subsection (a), with an exception not pertinent, states that "pending patent applications are preserved in secrecy," and subsection (b) states that "abandoned patent applications are *likewise* not open to public inspection" (emphasis added) except those referred to in a patent.[16] The rule was promulgated December 31, 1948, to become effective March 1, 1949.[17] Prior to 1949, pending and abandoned applications were usually the subjects of separate rules but they were, for practical purposes, treated alike. Pending applications have always been afforded secrecy;[18] abandoned applications were not given formal secrecy until 1949, although access to them was restricted after 1879, when the Patent Office

15. 37 C.F.R. § 1.14. *Patent applications preserved in secrecy*

(a) Except as provided in § 1.11(b) pending patent applications are preserved in secrecy. No information will be given by the Office respecting the filing by any particular person of an application for a patent, the pendency of any particular case before it, or the subject matter of any particular application, nor will access be given to or copies furnished of any pending application or papers relating thereto, without written authority in that particular application from the applicant or his assignee or attorney or agent of record, unless it shall be necessary to the proper conduct of business before the office or as provided by this part.

(b) Except as provided in § 1.11(b) abandoned patent applications are likewise not open to public inspection, except that if an application referred to in a U. S. patent is abandoned and is available, it may be inspected or copies obtained by any person on *written request without notice to the applicant.* Abandoned applications may be destroyed after 20 years from their filing date, except those to which particular attention has been called and which have been marked for preservation. Abandoned applications will not be returned.

16. Until 1879, the Patent Office, in the examination of pending applications, cited abandoned applications as references. This practice was discontinued in 1879. The current practice of *not* citing abandoned applications as references is set forth in 37 C.F. R. § 1.108.

17. 13 Fed.Reg. 9577 (1948).

18. A brief history of the rules granting secrecy to pending applications follows:

The first rule appeared in 1854, and it provided:

Aside from the caveats, which are required by law to be kept secret, all pending applications are, as far as practicable, preserved in like secrecy. No information will therefore be given to those inquiring whether any particular patent is before the office, or whether any particular person has applied for a patent.

With renumbering and inconsequential editorial change, the 1854 rule continued until 1879. In that year, the rule was revised twice, the latter version being:

Caveats and pending applications are preserved in secrecy. No information will be given without authority . . . unless it shall be necessary to the proper conduct of the business before the office, as provided by Rules . . . .

In 1897, the rule was revised in a manner creating an apparent dichotomy of treatment of pending and abandoned applications. The 1897 rule read:

Applications will be preserved in secrecy, except as provided in the interference rules; but copies of abandoned applications, upon petition therefor, for sufficient cause . . . will be furnished by the Commissioner.

abandoned the practice of citing abandoned applications as references in the examination of pending applications.[19] The degree of restriction is highly significant. An examination of the opinions of the Supreme Court of the District of Columbia and the opinions of the Commissioner of Patents fairly demonstrate that, aside from an interference proceeding in the patent office, only a defendant in an infringement suit could obtain inspection of one or more specific abandoned applications, but then only if they were applications of the plaintiff who sued him for infringement and the defendant could allege that they contained material relevant to his defense. See U. S. ex rel. Pollok v. Hall, 48 O.G. 1263 (Sup.Ct.D.C. 1888); Ex parte Fowler and Fowler, 49 O.G. 562 (1889) aff'd sub nom., U. S. ex rel. Fowler v. Commissioner, 62 O.G. 1968 (Sup.Ct.D. C. 1890); U. S. ex rel. Bulkley v. Butter-worth, 81 O.G. 505 (Sup.Ct.D.C. 1897); Ex parte Warner, 96 O.G. 1238 (1901); In re Dyer, 106 O.G. 1508 (1903); In re Ashtabula Telephone Company, 110 O.G. 860 (1904); In re Buck, 113 O.G. 1418 (1904); In re Taupenot, 113 O.G. 1418 (1904).

Thus, it appears that while the Patent Office had, for generations, maintained separate rules limiting public access to pending and abandoned applications respectively, the practical effect of the two rules was identical. Since we look to substance rather than form, we think the difference in nomenclature preserved by the Patent Office for many years is of little significance and thus we conclude that the legislative history of § 122 only reenforces the facial breadth of the legislative command that abandoned as well as pending patent applications are protected from general public disclosure.[20] Notwithstand-

---

The next revision occurred in 1916 and, except for a right of inspection of pending applications by the military for inventions having value in the prosecution of World War I, it continued unchanged until the present rule became effective in 1949. The essence of the 1916 rule read:

Pending applications are preserved in secrecy. No information will be given without authority . . . unless it shall be necessary to the proper conduct of business before the office, as provided by Rules . . . .

19. Prior to 1879, the rules of the Patent Office made abandoned patent applications freely available to the public. The first rule relating to inspection of abandoned applications was adopted in 1879, and it provided:

Certified copies of the files in cases of rejected or abandoned applications may be furnished to applicants or to other persons when specifically ordered, but no inspection of such files, except by the applicants or their duly authorized attorneys, will be permitted.

This rule continued until 1946, when it was revised into the following form:

Copies of the files of forfeited and abandoned applications may be furnished when ordered by the Commissioner. The requests for such copies must be presented in the form of a petition properly verified as to all matters not appearing of record in the Patent Office. (See Form ——).

The 1946 revision continued until it was supplanted by 37 C.F.R. § 1.14(b).

20. Our conclusion is in accord with the views of an authoritative commentator on the meaning and effect of § 122. The statement in the House and Senate Reports on H.R. 7794 that § 122 would codify "the rule of secrecy of patent applications which has existed in the Patent Office for generations" was undoubtedly derived from the testimony of Mr. Federico in the hearings on H.R. 3760, a prior version of H.R. 7794. Section 122 of H.R. 3760 is identical to § 122 of H.R. 7794, which was enacted as the present patent title. Mr. Federico had long been an examiner in the Patent Office and had assisted the committee staff in drafting H.R. 3760. Thus, it is significant that after the enactment of present § 122, Mr. Federico wrote that § 122 "makes no distinction between pending applications and abandoned applications . . . ." Federico, Commentary on the New Patent Act, 35 U. S.C.A. § 1, pp. 1, 36.

Although entitled to less weight, we note also the pendency in Congress of proposals to abolish the secrecy rule as to both pending and abandoned patent applications. Proposed legislative abolition of the rule may well stem from the legislative understanding that the rule exists. See H.R. 7111, § 122, 92d Cong., 1st Sess., 119 Cong.Rec.No.61 at H2877 (April 17, 1973); S. 1321, § 122, 93d Cong., 1st Sess., 119 Cong.Rec.No.45 at S. 5373 (March 22, 1973).

ing FOIA's strong policy of disclosure, we hold that mandatory disclosure of abandoned patent applications is foreclosed by § 122.

## VII.

As a constitutional barrier to the conclusion we reach, plaintiff argues that § 122 and 37 C.F.R. §§ 1.14(b) and 1.108 are unconstitutional. The claim that 37 C.F.R. §§ 1.14(b) and 1.108 are invalid is derivative of the claim that § 122 is invalid insofar as it exempts abandoned applications from public disclosure, and plaintiff advances three distinct theories to arrive at that conclusion. A related argument is that the district judge should have convened a three-judge court to pass upon plaintiff's constitutional contentions rather than to have decided them himself. We agree with the district court that plaintiff's constitutional contentions are lacking in merit, and indeed are so insubstantial that it was unnecessary to convene a three-judge court pursuant to 28 U.S.C. § 2282 to reject them.[21] We turn to plaintiff's several arguments.

First, plaintiff relies upon Supreme Court decisions which say that the Patent Clause of Art. I is at once a conferral of power and a limitation upon the power conferred. Plaintiff contends that abandoned patent applications are evidence of the nature and scope of prior art and the level of ordinary skill therein, particularly when the Patent Office has rejected an application as not representing a significant advance over the prior state of the art at the time of the invention; and therefore a rule denying public access to abandoned patent applications prevents the efficient use of evidence material to the resolution of

questions of patentability *in the constitutional sense.* It is argued that since the rule of secrecy is likely to lead to unconstitutional adjudications that extend patent protection to inventions that are not patentable constitutionally, the secrecy rule is itself unconstitutional.

■ We do not agree. If Congress, in purported exercise of the Patent Power, attempts to extend patent protection to an item that is not a "discovery" within the meaning of the Patent Clause, such exercise of power would probably be unconstitutional. Although the Supreme Court does not appear to have invalidated any patent legislation on this theory, it seems clear that the Court believes that patentability standards such as nonobviousness—the requirement that the invention be "unobvious to one of ordinary skill in the art at the time it was made"—have a constitutional dimension.[22] But there are several answers to the contention. In the first place, 35 U.S.C. § 102 which specifies the type of prior art which will prevent issuance of a patent, or render an issued patent invalid, does not specify abandoned applications as "prior art." Brown v. Guild (the Corn Planter Patent), 23 Wall. 181, 210, 211, 90 U.S. 181, 210, 211, 23 L.Ed. 161 (1874), holds that an abandoned application, *per se* cannot be the basis for holding a patent invalid because the application represents nothing more than an abandoned experiment. See also 1 Deller's Walker on Patents, 309 (1964). The rule has been criticized but not modified. Milburn Co. v. Davis Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651 (1926). But, where the concept of an abandoned application has been published or practiced so as to become "prior art," § 122 would not prevent a litigant

21. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1930); Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Maryland Citizens for A Rep. Gen. A. v. Governor of Md., 429 F.2d 606 (4 Cir. 1970).

22. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Anderson's Black Rock v. Pavement Salvage Co., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969).

in a suit over the validity of a patent from discovering any relevant and material abandoned patent applications. The exception in § 122 seems to be designed to meet this purpose. At best, full disclosure of abandoned patent applications would only facilitate the marshalling of evidence relevant to patentability that may be found in abandoned patent applications. Public disclosure of abandoned applications would probably permit the patent bar to develop expertise concerning what is contained in the mass of abandoned patents; patent attorneys might more readily be able to develop knowledge of what to look for and where to look for it under a system of public disclosure, in contrast to the present secrecy system where they must, indeed, start from scratch in their discovery in each case. But we doubt that the increased likelihood of correctness in adjudications about the validity of patents would be substantial. Furthermore, we do not think that a statute can be unconstitutional for no other reason than that it has some tendency to hamper the correct resolution of constitutional issues before the courts for adjudication.

Plaintiff's second constitutional theory relies upon the substantive due process clause of the fifth amendment. It is conceded that one of the purposes of the secrecy rule is to obviate the risk that, through publication, an applicant for a patent may lose rights arising under state trade secret law. Plaintiff says it is likely that many of the trade secrets embodied in abandoned patent applications are constitutionally unpatentable; and, if that be so, for the state to extend monopoly protection under its trade secret law to such inventions violates substantive due process.

■ The short answer to this argument is the recent decision in Kewanee Oil Co. v. Bicron Corp., supra. That case extended the holding in Goldstein v. California, 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973), that the power of Congress to protect writings by granting copyrights was not exclusive and that the states were not forbidden to encourage and protect the writings of those within their borders, to intellectual property in inventions, i. e., trade secrets. Kewanee held that "[s]tates may hold diverse viewpoints in protecting intellectual property relating to invention as they do in protecting the intellectual property relating to the subject matter of copyright. The only limitation on the States is that in regulating the area of patents and copyrights they do not conflict with the operation of the laws in this area passed by Congress . . . ." 416 U.S. at 479, 94 S.Ct. at 1885. Thus, the states may protect trade secrets, and we perceive no violation of the fifth amendment in federal forebearance to permit that power to be exercised.

Finally, plaintiff argues that neither Congress nor the Commissioner may validly assist patent applicants to preserve their state created trade secret rights in unpatentable ideas because of the Patent Clause of the Constitution. Again, the argument is that the states may not create trade secret rights in unpatentable ideas and that therefore Congress and the Commissioner may not assist private persons to maintain any such rights. Again the answer is Kewanee. The only possible constitutional bar to such state action stems, not from the Patent Clause, but from the Supremacy Clause. Any preemption of state authority is to be looked for, not in the constitutional grant of the Patent Power to Congress, but in the exercise of that power; and Kewanee holds that Title 35 does not of itself preempt state regulation and protection.

■ Since plaintiff's constitutional arguments are so insubstantial, we are satisfied that the district court had power, as a single judge, to decide her constitutional claims.

Affirmed.