577 F.2d 610
 198 U.S.P.Q. 601
 LEE PHARMACEUTICALS, Plaintiff-Appellant,
v.
Juanita M. KREPS, Secretary of Commerce, et al., Defendants-Appellees.
 No. 76-2082.
 United States Court of Appeals,
Ninth Circuit.
 June 29, 1978.
 
 Mary Helen Sears (argued), of Irons & Sears, Washington, D. C., for plaintiff-appellant.
 Alice Mattice (argued), Washington, D. C., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before HUFSTEDLER and WRIGHT, Circuit Judges, and SOLOMON,* District Judge.
 HUFSTEDLER, Circuit Judge:
 
 
 1
 Lee Pharmaceuticals ("Lee"), a patent applicant, brought this action to compel the Patent Office to produce abandoned patent applications under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1977) and to consider such applications as evidence of prior art in evaluating Lee's claims of patentability, under 35 U.S.C. § 131 (1970). Lee appeals from a judgment dismissing its complaint for failure to state a claim upon which relief could be granted. We affirm, holding that (1) abandoned patent applications are not producible under FOIA because section 122 of the Patent Act (35 U.S.C. § 122 (1970) ("(a)pplications for patents shall be kept in confidence by the Patent Office")) is a specific statutory exemption from disclosure within the meaning of Exemption 3 of FOIA (5 U.S.C. § 552(b)(3) (as amended in 1976)), and (2) no justiciable controversy is presented by Lee's challenge to Patent Office procedures.
 
 
 2
 Lee applied for a patent for a "carvable, dental composite restorative material" (Serial No. 504,838). Before the Patent Office began examining its application, Lee wrote to the Solicitor of the Patent Office demanding that abandoned patent applications for products similar to its own be considered as evidence of prior art in the examination process and demanding that copies of those applications be made available to Lee under FOIA. The Solicitor and later the Commissioner of Patents refused the demand relying upon 35 U.S.C. § 122 and citing Sears v. Gottschalk (4th Cir. 1974) 502 F.2d 122, cert. denied sub nom. Sears v. Dann (1975) 422 U.S. 1056, 95 S.Ct. 2680, 45 L.Ed.2d 709.[1] The Commissioner also told Lee that it had no obligation under FOIA to conduct any examination of its patent applications as requested. Lee then brought this action.
 
 
 3
 Lee's contentions must be placed in the context of the statutes and regulations generally applicable to patent applicants. The Patent Office was created to implement the federal government's constitutional duty to secure to "Inventors the exclusive Right to their respective . . . Discoveries." (United States Constitution, Art. 1, § 8, Cl. 8. See Kewanee Oil Co. v. Bicron Corp. (1974) 416 U.S. 470, 480-83, 94 S.Ct. 1879, 40 L.Ed.2d 315.) The earliest legislation conferring jurisdiction to grant patents was enacted in 1790 and following numerous intervening enactments, the law was clarified and codified by the Patent Act of 1952. (See P. J. Federico, Commentary on the New Patent Act, in 35 U.S.C.A. § 1 at pp. 2-10.) Congress has invested the Commissioner of Patents with broad discretion to establish procedures for the granting and issuing of patents (35 U.S.C. § 6), which has resulted in the issuance of detailed administrative regulations. (See 37 C.F.R. §§ 1.1 et seq. (1977).) Patent applicants whose claims are rejected may obtain internal re-examination and reconsideration by the Patent Office (id. § 1.111-.113) and appeal the rejection of a claim of patentability to the Board of Patent Appeals. (35 U.S.C. § 134; 37 C.F.R. §§ 1.191-.198.) Judicial review of the Board's determination is available alternatively in the Court of Customs and Patent Appeals (35 U.S.C. § 141-44; 37 C.F.R. §§ 1.301-.302) or "by civil action against the Commissioner in the United States District Court for the District of Columbia." (35 U.S.C. § 145; 37 C.F.R. §§ 1.303-.304.)
 
 
 4
 The principal provision of the Patent Act respecting the duty to examine patent applications is 35 U.S.C. § 131 which provides: "The Commissioner shall cause an examination to be made of the application and the alleged new invention; and if on such examination it appears that the applicant is entitled to a patent under the law, the Commissioner shall issue a patent therefor." Of critical import to patentability is the question whether the "invention" is truly novel (see 35 U.S.C. §§ 101 ("Whoever invents or discovers any new and useful process . . . or any new and useful improvement thereof, may obtain a patent . . . .") & 102 (conditions of patentability exclude, inter alia, inventions "known or used by others in this country")). Thus, 35 U.S.C. § 103 provides in pertinent part that a "patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art as to which said subject matter pertains." Patent examiners must by regulation "make a thorough study (of the application) and shall make a thorough investigation of the available prior art relating to the subject matter of the invention sought to be patented." (37 C.F.R. § 1.104(a).) The relevancy of prior art to a patent examination proceeding is described in 5 Deller's Walker on Patents § 453, at 361 (2d ed. 1972) as anything in tangible form that may properly be relied upon "in support of a rejection on a matter of substance, not form, of a claim in a pending application for patent."
 
 
 5
 Although abandoned patent applications were used as evidence of prior art very early in the history of the United States Patent Office, the practice has been discontinued since at least 1879. (Alexander Milburn Co. v. Davis-Bouronville Co. (1926) 270 U.S. 390, 400, 402, 46 S.Ct. 324, 325, 70 L.Ed. 651 (the practice "is convenient if not necessary to the Patent Office, and we are not disposed to disturb it").) Abandoned patent applications are not used because the secrecy of patent applications negates any assumption that their contents "would have been obvious" to the relevant segment of the public. (35 U.S.C. § 122; 37 C.F.R. § 1.14(a) & (b); Sears v. Gottschalk, supra, 502 F.2d at 131-32. See The Corn-Planter Patent (1874)90 U.S. (23 Wall.) 181, 210-11, 23 L.Ed. 161 (abandoned patent applications do not necessarily evidence prior use of invention and therefore do not bar patentability of later similar device). See also Application of Lund (1967)376 F.2d 982, 988, 991-92 (abandoned patent application not itself the equivalent of public knowledge of invention by reason of secrecy).) An abandoned patent application may become evidence of prior art only when it has been appropriately disclosed, as, for example, when the abandoned patent is referenced in the disclosure of another patent, in a publication, or by voluntary disclosure under 37 C.F.R. § 1.139. (5 Deller's Walker on Patents, supra, § 453 at 386-88.) Abandoned patent applications, as thus disclosed, are discoverable in later interference or infringement actions. (5 Deller's Walker on Patents, supra, § 437 at 49-51; Application of Lund,supra, 376 F.2d 982.)
 
 I.
 
 6
 Lee argues that abandoned patent applications are discoverable under FOIA because (1) section 122 is outside the protection of Exemption 3, and (2) in any event, abandoned patent applications do not fall within section 122. Despite section 122's express promise of confidentiality, Lee contends that it is not a specific statute of exemption within the meaning of Exemption 3. It argues that the contrary holding in Sears v. Gottschalk, supra, 502 F.2d 122, did not survive the 1976 amendment of Exemption 3 because section 122 confers discretion upon the Patent Office to disclose the content of patent applications. Lee asserts that this authority is "indistinguishable" from that conferred by the kinds of discretionary statutes which Congress intended to exclude from Exemption 3, when it enacted the 1976 amendment. In Lee's view, section 122 is not a true confidentiality statute, but, in substance, a statute affirmatively permitting disclosure, subject to limited exceptions. Its fallback position is that the abandoned patent applications it requests are exempted from section 122's coverage because their disclosure is necessary to carry out an alleged duty to consider abandoned patent applications as evidence of prior art in 35 U.S.C. § 131 application examinations.
 
 
 7
 The Freedom of Information Act provides generally for liberal access to governmental records by citizens (5 U.S.C. § 552(a)), with the exception of those classes of material specifically exempted from disclosure by its own terms (id. § 552(b)).[2] While "the general rule under the Act is to allow disclosure" and to construe the exemptions narrowly (Theriault v. United States (9th Cir. 1974) 503 F.2d 390, 392; see Dept. of Air Force v. Rose (1976) 425 U.S. 352, 360-62, 96 S.Ct. 1592, 48 L.Ed.2d 11; see also Washington Research Project, Inc. v. HEW (1974) 164 U.S.App.D.C. 169, 176, 504 F.2d 238, 245), material which falls within an exemption provision is excluded from the operation of the Act. (NLRB v. Sears, Roebuck & Co. (1975) 421 U.S. 132, 137, 95 S.Ct. 1504, 44 L.Ed.2d 29. See also Administrator, FAA v. Robertson (1975) 422 U.S. 255, 261-65, 95 S.Ct. 2140, 45 L.Ed.2d 164; Westinghouse Electric Co. v. Schlesinger (4th Cir. 1976) 542 F.2d 1190, 1197-99 & nn. 10-17 (if another statute forbids disclosure, agency must not produce the material under FOIA).) The exemption provisions of FOIA express the congressional determination that in some areas the public interest in maintaining confidentiality of public records outweighs the competing interest in having their contents revealed. (See EPA v. Mink (1973) 410 U.S. 73, 80 & n. 6, 93 S.Ct. 827, 35 L.Ed.2d 119; Note, The Effect of the 1976 Amendment to Exemption Three of the Freedom of Information Act, 76 Colum.L.Rev. 1029, 1030-32 (1976) (hereafter cited as Note, FOIA Exemption Three).)
 
 
 8
 Exemption 3 of FOIA, as amended, provides that FOIA
 
 
 9
 "does not apply to matters that are . . . specifically exempted from disclosure by statute . . ., provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." (5 U.S.C. § 552(b)(3) (1977).) (The italicized proviso of the statute was added by 1976 amendment. Pub.L. 94-409, § 5(b), 90 Stat. 1247.)
 
 
 10
 Although the amended version of Exemption 3 did not become effective until this appeal was pending, we apply the amended exemption as the law currently governing the duties of government agencies under FOIA. (NLRB v. Sears, Roebuck & Co., supra, 421 U.S. at 164-65, 95 S.Ct. 1504; see also Bradley v. School Board of City of Richmond (1974) 416 U.S. 696, 710-12, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 ("a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary").)
 
 
 11
 The congressional purpose in enacting Exemption 3 in its original form was to expand citizen access to government documents and files without adversely affecting the existing statutes that provided for confidentiality of agency records. Congress recognized that statutes providing for confidentiality generally reflected prior congressional determinations that confidentiality was necessary to protect privacy rights of certain persons or to further the effective administration of specific federal programs. (Administrator, FAA v. Robertson, supra, 422 U.S. at 262-67, 95 S.Ct. 2140. See also Note, FOIA Exemption Three, supra, 76 Colum.L.Rev. at 1030-32, 1036-41.)
 
 
 12
 The Robertson Court gave an expansive reading to Exemption 3, stating that "all existing statutes 'which restrict public access to specific Government records' " were included within the scope of the exemption. (422 U.S. at 265, 95 S.Ct. at 2147.) The Court reasoned that there was nothing in the legislative history to indicate that Congress had intended to except any particular non-disclosure statute. (Id. at 263-67, 95 S.Ct. 2140.) In reaching that conclusion, the Court repudiated a line of cases from the Circuits, a leading example of which was Stretch v. Weinberger (3rd Cir. 1974) 495 F.2d 639, which had held that statutes protecting confidentiality fell within Exemption 3 only if Congress in that statute had specifically identified either a class or category of items to be exempted, or at least prescribed guidelines for the exercise of discretion. (Id. at 640-41.) Stretch reasoned that treating statutes which gave "unfettered and unguided" power to agencies to withhold information could as within Exemption 3 eviscerate FOIA.[3]
 
 
 13
 The congressional history of the 1976 amendment of Exemption 3 expressly reveals Congress' intent to overturn Robertson and to narrow the scope of Exemption 3, thereby excluding from the exemption those statutes which permitted wholly discretionary non-disclosure, such as those involved in both Robertson and Stretch.[4] Congressional intent was unmistakably to adopt the reasoning of Stretch and to exclude from the exemption statutes giving unfettered power to agencies to withhold information from the public.[5]
 
 
 14
 Section 122 meets fully the Stretch criteria as embodied in the 1976 amendment to Exemption 3. Neither the Patent Office nor the Commissioner is given unfettered discretion to decide whether or not to reveal the contents of patent applications.
 
 Section 122 provides:
 
 15
 "Applications for patents shall be kept in confidence by the Patent Office and no information concerning the same given without authority of the applicant or owner unless necessary to carry out the provisions of any Act of Congress or in such special circumstances as may be determined by the Commissioner." (35 U.S.C. § 122.)
 
 
 16
 Section 122 was enacted as part of the 1952 Patent Act for the purpose of incorporating into the new Act " 'the rule of secrecy of patent applications which has existed in the Patent Office for generations.' " Sears v. Gottschalk, supra, 502 F.2d at 129, quoting relevant House and Senate reports; emphasis added by the Sears court.) Both abandoned and pending applications have been explicitly afforded secrecy by Patent Office regulations since 1949, and those regulations are substantially unchanged today. (37 C.F.R. §§ 1.14, 1.108.) The evident purpose of the confidentiality proviso is to prevent the patent laws from being frustrated by permitting inventors' discoveries to become public knowledge before a patent is secured. As the Court pointed out in Lear, Inc. v. Adkins (1969) 395 U.S. 653, 671-72 & n. 17, 89 S.Ct. 1902, 1911-1912, 23 L.Ed.2d 610: "(U)ntil a patent issues, a potential licensee may not learn his licensor's ideas simply by requesting the information from the Patent Office. During the time the inventor is seeking patent protection, the governing federal statute requires the Patent Office to hold an inventor's patent in confidence. If a potential licensee hopes to use the ideas . . . he must deal with the inventor himself, unless the inventor chooses to publicize his ideas to the world at large." The same principles apply to abandoned applications because such applications may be reactivated at a later date. 37 C.F.R. § 1.137; Sears v. Gottschalk, supra, 502 F.2d at 128.[6]
 
 
 17
 The provision of section 122 which permits the Commissioner to make disclosure in "special circumstances" is not an authorization to the Commissioner to disclose the contents of patent applications whenever he feels like it. As we have earlier noted, the circumstances under which disclosure may be made are extremely narrow. (E. g., 5 Deller's Walker on Patents, supra, § 437 at 47-51; Note, Discovery in Patent Interference Proceedings, 89 Harv.L.Rev. 573 (1976). See also 37 C.F.R. § 1.14.) Contrary to Lee's argument, section 122 is an express nondisclosure statute with restricted authority on the part of the Commissioner, under special circumstances, to permit disclosure. The statute is not an authorization to an administrator to exempt information from disclosure. (See California ex rel. Christensen v. Weinberger, supra, 505 F.2d at 768.)[7]
 
 
 18
 Section 122 bears no resemblance to the statutes considered in both Robertson and Stretch. Section 122 provides for non-disclosure of "particular types of matters," patent applications, thus falling squarely within provision (B) of Exemption 3.[8] The statutes involved in Robertson and Stretch applied, variously, to all records and information possessed by the FAA or CAB and to all records of HEW.[9] The statutes there afforded discretion to agencies to withhold any matter they deemed it desirable to keep secret. Conversely, section 122 affirmatively requires confidentiality for the specific purpose of furthering the objections of the patent function. (Cf. Irons v. Gottschalk (D.C. Cir. 1977) 179 U.S.App.D.C. 37, 39-41, 548 F.2d 992, 994-96 & n. 3 (section 122 protects patent applications from FOIA following the 1976 amendment of Exemption 3, but manuscript decisions of the Patent Office do not fall within protection of 122).)
 
 
 19
 Nothing in the legislative history of the 1976 amendment to Exemption 3 supports Lee's argument that Congress intended thereby to exclude statutes like section 122. Absent the clearest congressional direction, we would not attribute to Congress an intent to undercut the patent system and to vitiate protections uniformly provided since the institution of patent application procedures, in the guise of making the workings of government more open and accessible to the public. Destruction of the patent system would follow if FOIA could be used to obtain abandoned patent applications because that interpretation of FOIA would permit all pending applications to become equally available. (See Sears v. Gottschalk, supra, 502 F.2d at 128-30.)
 
 
 20
 Lee's contention that the abandoned patent applications it requests are outside the protections of section 122 also fails. Lee's theory is that disclosure of abandoned patent applications is, within the meaning of section 122, "necessary to carry out the provisions of an Act of Congress." The premise is that the Patent Office is obligated under 35 U.S.C. § 131 to consider abandoned patent applications which are relevant to the patent being examined as evidence of prior art. The premise is unsound. Nothing in section 131 purports to compel the Patent Office to undertake a search of all abandoned patent applications in deciding patentability. Lee's convoluted argument to the contrary is based upon its own novel interpretation of 37 C.F.R. § 1.104(a). It contends that section 1.104(a)'s requirement that patent examiners make a thorough investigation of available prior art compels patent examiners to search all abandoned patent applications because such applications are sometimes used as evidence of prior art in infringement and interference actions. It then wishes us to read its interpretation of section 1.104(a) into 35 U.S.C. § 131, as a statutory command.
 
 
 21
 Lee's contentions are entirely unsupported by the language of the statute and regulations, and their consistent interpretation. As we have earlier mentioned, the Patent Office has not used abandoned patent applications as evidence of prior art for almost 100 years, and the policy of nonconsideration has received explicit judicial approval for more than 50 years. (Alexander Milburn Co., supra, 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651.)
 
 
 22
 The district court correctly concluded that Lee's complaint stated no claim for relief under FOIA.
 
 II.
 
 23
 Lee also contends that, even if disclosure to it cannot be compelled under FOIA, its complaint stated a valid basis for compelling the Patent Office to consider abandoned patent applications as evidence of prior art in evaluating Lee's patent application. In blunt terms, Lee contends that the court had jurisdiction in this action to rewrite 35 U.S.C. § 131, the regulations promulgated by the Patent Office and its practice in evaluating claims of patentability. The district court did not have jurisdiction to accept Lee's extraordinary invitation.
 
 
 24
 Lee failed to plead any applicable statutory basis of jurisdiction. FOIA contains no grant of jurisdiction to determine the legality of agency operating procedures collateral to a disclosure request. The Administrative Procedure Act (5 U.S.C. §§ 701-06), upon which Lee relies, is not itself a basis of jurisdiction. (Califano v. Sanders (1977) 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192.) Its reliance on the mandamus statute is equally unavailing because mandamus does not lie in this case. As we held in Elliott v. Weinberger, (9th Cir. 1977) 564 F.2d 1219, mandamus will lie to provide jurisdiction to define and to compel compliance with due process requirements or "to compel officials to comply with the law when 'the claim is clear and certain and the duty of the officer is ministerial and so plainly prescribed as to be free from doubt.' Jarrett v. Resor, 426 F.2d 213, 216 (9th Cir. 1970)." (Id. at 1226.) No due process violation is conceivably involved and the existing law is contrary to the claim that Lee has made. (See also Association of American Medical Colleges v. Califano (D.C. Cir. 1977) 569 F.2d 101, 113-14.)
 
 
 25
 Even if we assume, arguendo, that Lee stated sufficient facts to have alleged jurisdiction under 28 U.S.C. § 1331(a), no presently justiciable controversy exists. In the first place, as Lee concedes, it has not exhausted its administrative remedies. Its failure to exhaust administrative remedies forecloses present judicial review. (Klein v. Commissioner of Patents (4th Cir. 1973) 474 F.2d 821; Doyle v. Brenner (1967), 127 U.S.App.D.C. 283, 383 F.2d 210. See also 5 U.S.C. § 704; Davis, Administrative Law of the Seventies, § 20.01-.08 (1976).) Lee argues that the exhaustion doctrine does not prevent judicial intervention because this is an exceptional case calling for early review. Lee's argument is certainly novel, but the case does not present any exceptional circumstances warranting premature judicial intervention.
 
 
 26
 In the second place, the more fundamental defect is that the complaint states no claim or controversy which is ripe for adjudication. The ripeness doctrine was designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by challenging parties." (Abbott Laboratories, Inc. v. Gardner (1967) 387 U.S. 136, 148-49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681. Accord: Toilet Goods Association v. Gardner (1967) 387 U.S. 158, 160-65, 87 S.Ct. 1520, 18 L.Ed.2d 697; Gardner v. Toilet Goods Association (1967) 387 U.S. 167, 170-72, 87 S.Ct. 1526, 18 L.Ed.2d 704; New York Stock Exchange, Inc. v. Bloom (D.C. Cir. 1977) 562 F.2d 736, 740-43.)
 
 
 27
 The ripeness concept is closely related to the case or controversy requirement of Article 3, which forecloses the courts from resolving hypothetical or abstract questions or questions that are likely to be resolved by the passage of time before the occurrence of any actual injury to the plaintiff. (Flast v. Cohen (1968) 392 U.S. 83, 94-101, 88 S.Ct. 1942, 20 L.Ed.2d 947; Aetna Life Insurance Co. v. Haworth (1937) 300 U.S. 227, 239-41, 57 S.Ct. 461, 81 L.Ed. 617.)
 
 
 28
 This case is hopelessly immature. The Patent Office's examination of Lee's application is incomplete, the allegedly illegal procedure has not yet been applied to it, and there is no final administrative action by which it can be aggrieved. (See Sampson v. Murray (1974) 415 U.S. 61, 74, 94 S.Ct. 937, 39 L.Ed.2d 166; see also Toilet Goods Association v. Gardner, supra, 387 U.S. at 164-65, 87 S.Ct. 1520.) The entire issue may become moot as a result of the patent examiner's determinations or abandonment of Lee's patent claim.[10] Lee has failed to show that it has "suffer(ed) legal wrong . . . or (that it has been) adversely affected or aggrieved" by agency action. (5 U.S.C. § 702; see Public Citizen v. Lockheed Aircraft Corp. (1977), 184 U.S.App.D.C. 133, 139-140, 565 F.2d 708, 714-15.)
 
 
 29
 The district court lacked jurisdiction of the subject matter, and the complaint was properly dismissed.
 
 
 30
 AFFIRMED.
 
 
 
 *
 Honorable Gus J. Solomon, Senior United States District Judge, District of Oregon, sitting by designation
 
 
 [1]
 See also Misegades & Douglas v. Schuyler (E.D.Va.1971) 328 F.Supp. 619, 619-20 (holding § 122 shields "all pertinent information" related to pending patent applications from FOIA disclosure)
 
 
 [2]
 The Act provides in pertinent part:
 (a)
 (3) . . . each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules . . . shall make the records promptly available to any person.
 (b) This section does not apply to matters that are
 (3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;
 5 U.S.C.A. § 552(a) & (b) (1977).
 
 
 [3]
 495 F.2d at 640-41. Accord Schecter v. Weinberger (1974) 165 U.S.App.D.C. 236, 506 F.2d 1275. But see California ex rel. Younger v. Weinberger (9th Cir. 1974) 505 F.2d 767. See generally Westinghouse Elect. Co. v. Schlesinger, supra, 542 F.2d at 1199-1202 and cases cited therein; Note, FOIA Exemption Three, supra, 76 Colum.L.Rev. at 1032-36. See also Administrator, FAA v. Robertson, supra, 422 U.S. at 262-63, n. 6, 95 S.Ct. 2140
 
 
 [4]
 The draftsmen stated in the original House Report that in their view the broad reading of Exemption 3 in Robertson "misconceives the intent of exemption (3)", H.R. No. 94-880 reprinted in (1976) U.S.Code Cong. & Admin.News, 94th Cong. 2d Sess. 2183, 2204-05. The amendment's intention was thus to exclude such statutes as gave the agency's administrator "carte blanche to withhold any information he pleases" id. at 2205, but to preserve exemptions where Congress has explicitly provided for protection of data. See also id. at 2191 (explicating companion provision to Exemption 3 in 5 U.S.C. § 552b: a "statute that merely permits withholding, rather than affirmatively requiring it, would not come within this paragraph, nor would a statute that fails to define with particularity the type of information it requires to be withheld.")
 Significantly, at an interim stage, the bill was altered to read that the disclosure provisions did not apply to matters that were "Required or permitted to be withheld from the public by any statute establishing particular criteria or referring to particular types of information." Id. at 2221 (emphasis in original); see also id. at 2213 (change would include within section statutes "which allow judgment or discretion in withholding information"). The permissive approach was deleted in the final version.
 
 
 [5]
 The Conference Committee Report on the final version of Exemption 3 amendments stated: "The conferees intend this language to overrule the decision of the Supreme Court in Administrator, FAA v. Robertson, 422 U.S. 255 (, 95 S.Ct. 2140, 45 L.Ed.2d 164) (1975), which dealt with section 1104 of the Federal Aviation Act of 1958 (49 U.S.C. 1504). Another example of a statute whose terms do not bring it within this exemption is section 1106 of the Social Security Act (42 U.S.C. 1306) (The statute involved in Stretch v. Weinberger )." H.R.Conf.Rep. No. 94-1441 reprinted in (1976) U.S.Code Cong. & Admin.News, 94th Cong., 22d Sess. 2244, 2261 (footnote omitted)
 
 
 [6]
 The Sears plaintiff conceded the protected status of pending patent applications but contended that section 122 did not apply to abandoned patent applications. Lee does not here so distinguish the categories, and we agree with the Sears court that the legislative history of section 122 suggests that the statute applies equally to both classes of applications. See 502 F.2d at 130 & n. 20
 
 
 [7]
 No submitters of abandoned patent applications are parties to these proceedings. Thus, their rights are not directly in issue. See generally D.G. Clement, The Rights of Submitters to Prevent Agency Disclosure of Confidential Business Information: The Reverse Freedom of Information Act Lawsuit, 55 Texas L.Rev. 587 (1977); Westinghouse Elec. Corp. v. Schlesinger, supra, 542 F.2d 1190. However, the fact that a promise of confidentiality attaches for all practical purposes to each application is a significant factor here which weighs against Lee's argument. Lear, Inc. v. Adkins, supra, 395 U.S. at 671-72 & n. 17, 89 S.Ct. 1902; see Westinghouse Elec. Corp. v. Schlesinger, supra, 542 F.2d at 1210-16; Petkas v. Staats (1974) 163 U.S.App.D.C. 327, 329-330, 501 F.2d 887, 889-90 (promise of confidentiality may evidence necessity of secrecy to enable efficiency in administration and protect real interests of person who has submitted information). See also Marinette Marine Corp. v. United States (Ct.Claims 1976), 546 F.2d 365, 366; Robles v. E. P. A. (4th Cir. 1973), 484 F.2d 843, 846
 
 
 [8]
 Provision (B) is alternative to provision (A) which applies to statutes providing flat barriers to disclosure and admitting of no discretion. E. g. Seymour v. Barabba (D.C. Cir. 1977) 559 F.2d 806, 807-08. The Congress necessarily envisioned that statutes satisfying provision (B)'s requirements could provide for limited discretionary disclosure. See Green v. Dept. of Commerce (D.D.C.1977) --- F.Supp. ----. See also Sears v. Gottschalk, supra, 502 F.2d at 127 ("we infer that the Third Circuit (in Stretch v. Weinberger ) would be satisfied that the phrase 'applications for patents' sufficiently identifies the class of items Congress deems appropriate for exemption so that the absence of guidelines in § 122 for the exercise of the Commissioner's discretion would not be determinative.") and see id. at 126-27. See generally, Note, FOIA Exemption 3, supra, 76 Colum.L.Rev. at 1041-46
 
 
 [9]
 See 49 U.S.C. § 1504 ("Any person may make written objection to the public disclosure of information contained in any application, report, or document filed . . . or of information obtained by the (Civil Aeronautics) Board or the (Federal Aviation) Administrator . . . . Whenever such objection is made, the Board or Administrator shall order such information withheld from public disclosure when, in their judgment, a disclosure of such information would adversely affect the interests of such person and is not required in the interest of the public."); 42 U.S.C. § 1306(a) ("No disclosure of any return or portion of a return . . . or of any file, record, report or other paper, or any information, obtained at any time by the Secretary of Health, Education, and Welfare, or the Secretary of Labor . . . shall be made except as the (Secretaries) . . . may by regulations prescribe.")
 The Committee Report which explained the amendment to Exemption 3 when it was introduced stated that it was intended only to "eliminate the gap created in the Freedom of Information Act by Robertson without in any way endangering statutes (which explicitly provide for protection of particular types of information)." H.R.Rep. No. 94-880, supra n. 14 (1976) U.S.Code Cong. & Admin.News at 2205.
 
 
 [10]
 On Lee's own theory, it will suffer injury if, by reason of the Patent Office's failure to consider abandoned patent applications, its patent application is erroneously approved, and in a hypothetical future action, a third party defeats Lee's patent by relying upon an abandoned patent application as evidence of prior art