[No. C008289. Third Dist. Nov. 3, 1992.]

STATE BOARD OF EQUALIZATION et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
ASSOCIATED SALES TAX CONSULTANTS, INC., Real Party in
Interest.

**[Opinion certified for partial publication.\*]**

\*See, *post*, footnote 2.

## COUNSEL

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Robert F. Tyler and Lawrence Kenneth Keethe, Deputy Attorneys General, for Petitioners.

No appearance for Respondent.

McDonough, Holland & Allen and Mark A. Wasser for Real Party in Interest.

## OPINION

**BLEASE, Acting P. J.**—This case concerns secret law. It arises on a writ of review of a judgment, issued under the California Public Records Act (Gov. Code, § 6250 et seq.)[1], which directs the State Board of Equalization (Board) to disclose to Associated Sales Tax Consultants (Associated) documents (from which confidential taxpayer information has been excised) which show the Board's practice in interpreting and applying Sales and Use Tax Regulations 1660 and 1667 (Cal. Code Regs., tit. 18, §§ 1660, 1667).

The Board concedes the documents are public records but would withhold them on the ground the public interest in their disclosure is outweighed by the burden of excising confidential taxpayer information. In the published

---

[1]All references to a section are to the Government Code unless otherwise indicated.

portion of this opinion[2] we will conclude that the taxpayer information is segregable from the documents sought and that the public interest in disclosure far outweighs the burden and cost of excision, which will largely be borne by Associated. We also will conclude that the Board must prepare a list of the documents at Associated's expense to permit it to narrow its request by eliminating unwanted records.

We will affirm the judgment.

## FACTS

Associated is engaged in the business of advising taxpayers on the construction and application of the California sales and use tax law. It provides tax planning services, represents taxpayers in audits and other matters before the Board and counsels them about the tax consequences of particular transactions. Much of its business involves the application of sales and use tax regulations to its clients' cases.

Associated requested the Board to provide it with copies of documents relating to the Board's interpretation and application of Sales and Use Tax Regulations 1660 and 1667[3], including Tax Counsel opinions, published opinions, internal memoranda and correspondence, preliminary hearing officer reports on audit protests, replies to taxpayer inquiries, and audit staff training materials. It asserts that the material is used by Board staff in administering and enforcing these regulations and is therefore pertinent to the services it provides its clients.

The Board denied the request on the ground the documents contain confidential taxpayer information under Revenue and Taxation Code section 7056 that would have to be excised before disclosure.[4] Associated agreed to excision and to pay the necessary fees for doing so and the costs of copying

---

[2]The Reporter of Decisions is directed to publish the opinion except for part VII of the Discussion.

[3]Regulations 1660 (Cal. Code Regs., tit. 18, § 1660 [leases of tangible personal property]) and 1667 (Cal. Code Regs., tit. 18, § 1667 [exemption certificates]).

[4]Revenue and Taxation Code section 7056 provides in pertinent part, "(a)(1) Excepting the information set forth on [sellers' permits], it is unlawful for the board [or] any person having an administrative duty under this part . . . to make known in any manner whatever the business affairs, operations, or any other information pertaining to any retailer or any other person required to report to the board or pay a tax pursuant to this part, or the amount or source of income, profits, losses, expenditures, or any particular thereof, set forth or disclosed in any return, or to permit any return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person."

Section 6254, subdivision (k) provides that information contained in public records may be withheld if disclosure is prohibited by state law.

the records. Nonetheless the Board asserted that "[t]he burden of producing these documents far exceeds the benefits of disclosure." The Board also claimed the request lacks sufficient specificity.

Associated petitioned the superior court for declaratory relief and for an order compelling the Board to disclose the documents. The Board answered, admitting the documents are public records within the meaning of the Public Records Act (see § 6252, subd. (d)) but denying impropriety in not disclosing them. At the hearing on the petition the Board produced three boxes of documents comprising the requested records. The court declined to examine them (see § 6259, subd. (a))[5], choosing to hear argument why the Board found it too onerous to go through the boxes, an "identifiable quantity" and "within the realm of reason," as the court found, and excise confidential taxpayer information, provided that Associated paid the cost of so doing. The Board claimed the task would involve careful reading and editing of the records and would consume about a month and one-half of a staff counsel's time that otherwise could be devoted to other Board business.[6]

The court responded that the California Public Records Act necessarily contemplates that staff time will be used to process record requests and that, in any event, the Board could contract with outside counsel to perform the task of identifying and excising the confidential portions of the records. The Board claimed that in some instances the business activities described are so unique to a particular company or location (e.g., video rentals to motels, or crane hauling in "x" town, or the company doing "y" in Oakland) that the information would indirectly disclose the taxpayer's identity to an informed or inquisitive reader and therefore have to be excised to preserve confidentiality. What would be left, the Board maintained, would be abstract statements of the law, divorced from the salient facts. The court disagreed.

Finally, the Board argued that, assuming the request to be appropriate, there are 96 other sales and use tax regulations, and, "as day follows night," this request will be followed by seriatim requests for documents relating to the remaining regulations, requests which on the whole will be overly

---

[5]Section 6259, subdivision (a) provides, in pertinent part, "The court shall decide the case after examining the record in camera, if permitted by subdivision (b) of Section 915 of the Evidence Code, papers filed by the parties and any oral argument and additional evidence as the court may allow." It has been held that in camera inspection under section 6259 is not required as a matter of law; it is trusted to the sound discretion of the trial court. (*Register Div. of Freedom Newspapers, Inc.* v. *County of Orange* (1984) 158 Cal.App.3d 893, 901 [205 Cal.Rptr. 92].) Neither party complains of the trial court's refusal to examine the records in question.

[6]The Board estimated that about 60 percent of the documents would require editing of confidential information before they could be disclosed. This translates into 1,260 [2100 × .60 = 1260] documents, or about 3,600 [6000 × .60 = 3600] pages of material.

burdensome to the Board and therefore unreasonable. The court responded that the propriety of requests not yet made was not before the court.

The court granted Associated's petition. It weighed the relative public interests and found that, in light of the circumscribed nature of the request and Associated's willingness to pay reasonable costs for its processing, the public interest in disclosure outweighed any burden to the Board. At Associated's behest, the court further ordered the Board to prepare a list of the requested documents, for which Associated would deposit $1,000 toward its cost. The purpose of the list was to permit Associated to refine its request to exclude unwanted documents.

The Board seeks review of this judgment.

DISCUSSION

I

*Scope of Review*

Preliminarily we digress to discuss the scope of appellate review. The Board filed a timely notice of appeal from the judgment. Associated moved to dismiss the appeal on the ground that review may be had only by writ of review, as provided by section 6259, subdivision (c), and that the test of such review is whether the trial court acted in excess of its jurisdiction.[7] We granted the motion and dismissed the appeal.

The Board petitioned for a writ of review and we granted the writ to hear the case on its merits. In considering the scope of appellate review we sought briefing on the validity of the provision of section 6259, subdivision (c), which precludes review by appeal of an order granting or denying the disclosure of public records. The resolution of that issue was foreshortened by the decision of the California Supreme Court in *Times Mirror Co.* v. *Superior Court* (1991) 53 Cal.3d 1325 [283 Cal.Rptr. 893, 813 P.2d 240].

In *Times Mirror* the court declined to consider the validity of section 6259, subdivision (c), decided it could hear the matter upon a writ of review

---

[7]Section 6259, subdivision (c), as applicable here, provided: "In an action filed on or after January 1, 1985, an order of the court, either directing disclosure by a public official or supporting the decision of the public official refusing disclosure, is not a final judgment or order within the meaning of Section 904.1 of the Code of Civil Procedure from which an appeal may be taken, but shall be immediately reviewable by petition to the appellate court for the issuance of the extraordinary writ of review as defined in Section 1067 of the Code of Civil Procedure. Any person who fails to obey the order of the court shall be cited to show cause why he or she is not in contempt of court." (Stats. 1984, ch. 802, § 1, pp. 2804-2805.)

This section was amended in 1990 to substitute "1991" for "1985" and "extraordinary writ" for "extraordinary writ of review." (Stats. 1990, ch. 908.)

and construed subdivision (c) to permit review of trial court orders "on their merits."[8] That construction equates the scope of review by writ of review, as therein provided, with the scope of review on appeal. Accordingly, we will consider the merits of the trial court's order as if this case were on appeal.

II

*The Public Interest in Disclosure*

The superior court ordered the Board to provide to Associated "copies of all records maintained by the Principal Auditor's Office regarding the history and current interpretation of Sales and Use Tax Regulations 1660 and 1667, including copies of all Tax Counsel's letter opinions concerning said regulation issued through the date of [the] request." The request specified that such records should include "all documents relating to Regulations 1660 and 1667 upon which the Board's audit staff would rely or be able to rely, in the process of interpreting and applying these regulations including . . . all Tax Counsel's opinions . . . ; internal memorandum . . . ; the decisions . . . that constitute the preliminary hearing officer's reports on audit protests . . . ; replies to taxpayer inquiries . . . and training materials or other matter intended for the guidance of the audit staff."

The Board concedes that these records are public records. Indeed, it must. The Public Records Act was enacted against a "background of legislative impatience with secrecy in government . . . ." (53 Ops.Cal.Atty.Gen. 136, 143 (1970); *San Gabriel Tribune* v. *Superior Court* (1983) 143 Cal.App.3d 762, 772 [192 Cal.Rptr. 415].) It so provides. (§ 6250; see also § 54950.)

The Board asserts the records requested are of no precedential effect within the agency. Whether or not the Board is legally bound by its working law is not controlling. The records sought will disclose the Board's practices in applying its regulations to the cases coming before it and therefore its working law. This is a matter of interest to the public and to the persons who come before the Board regardless of the precedential effect of the records.

There is a manifest public interest in the avoidance of secret law and a correlative interest in the disclosure of an agency's working law. (See *NLRB*

---

[8]The court said: "We requested briefing at oral argument on the question whether that portion of section 6259, subdivision (c), prohibiting review by appeal contravenes article VI, section 11 of the California Constitution, which confers appellate jurisdiction upon the Courts of Appeal over every cause as to which the 'superior courts have original jurisdiction.'. . . While the question is an interesting one, we need not decide it in this case. Whatever the merits of the provision purporting to preclude review by appeal, we discern no constitutional impediment to the Legislature providing, as it has here, an avenue of relief by means of writ review. As noted above, we interpret the statute to permit review of a trial court order on the merits." (53 Cal.3d at p. 1333, fn. 6.)

v. *Sears, Roebuck & Co.* (1975) 421 U.S. 132, 153 [44 L.Ed.2d 29, 49, 95 S.Ct. 1504]; *Citizens for a Better Environment* v. *Department of Food & Agriculture* (1985) 171 Cal.App.3d 704, 714, fn. 7. [217 Cal.Rptr. 504]) The revelation of an agency's working law promotes its accountability to the public and the consistent, predictable and nonarbitrary application and enforcement of the law. (See *CBS, Inc.* v. *Block* (1986) 42 Cal.3d 646, 651 [230 Cal.Rptr. 362, 725 P.2d 470].) This working law is found in the application of an agency's regulations to cases coming before it and in the opinions of its counsel and audit staff training materials which guide the Board's employees in the performance of their duties. It is in the application of a rule to the facts of a case that its meaning is frequently disclosed.

## III

### *The Records Are Identifiable*

■■■ There is no serious question whether Associated's request "reasonably describes an identifiable record", as required by section 6257;[9] the records were in fact produced. ■■■■■ The size of the request is not the measure, as the Board suggests, but whether the records can be located with reasonable effort. (*Sears* v. *Gottschalk* (4th Cir. 1974) 502 F.2d 122, 125; see *Irons* v. *Schuyler* (D.C. Cir. 1972) 465 F.2d 608, 613 [151 App.D.C. 23].)[10]

The Board's reliance on this court's opinion in *Rosenthal* v. *Hansen* (1973) 34 Cal.App.3d 754 [110 Cal.Rptr. 257] is misplaced. It determined only that a government agency did not have to *provide* copies of records regardless of their nature and bulk. It did not quarrel with the requester's right to "make copies of any documents involved under reasonable conditions." (*Id.* at p. 758.)

---

[9]Associated's request for "all records maintained by the Principal Auditor's Office regarding the history and current interpretation of Sales and Use Tax Regulations 1660 and 1667" describes identifiable records (i.e., can be located with reasonable effort) within the meaning of sections 6256 and 6257. The records are categorized by regulation number and are maintained in the Board's principal auditor's office. For that reason we reject the Board's assertion that Associated's request, to be sufficiently specific, must reference individual documents by date, author and subject matter. Associated need not have provided the Board with "a complete description down to the last detail of title and file number." (See *National Cable Television Association, Inc.* v. *F.C.C.* (D.C. Cir. 1973) 479 F.2d 183, 190 [156 App.D.C. 91].) It would be impossible for Associated to be so specific unless it possessed a document index, which the Board refuses to provide. By this ploy, the Board would place Associated into a classic "Catch-22" situation. We consider in a later portion of this opinion the issue with respect to Associated's right to a document index.

[10]The Public Records Act is modeled upon the federal Freedom of Information Act (FOIA) (5 U.S.C. § 552) and we may look to the legislative history of the federal act and its judicial construction as aids in interpreting the California act. (*American Civil Liberties Union Foundation* v. *Deukmejian* (1982) 32 Cal.3d 440, 447 [186 Cal.Rptr. 235, 651 P.2d 822].)

## IV

### *Confidential Taxpayer Information Is Segregable*

■ The Board spills much ink in defense of the interest of taxpayers in the privacy of information which may identify them. That is not in issue. Such information may not be disclosed.[11] But the fact that a public record may contain some confidential information does not justify withholding the entire document. (*CBS, Inc. v. Block, supra,* 42 Cal.3d at pp. 652-653.)

The Public Records Act provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt by law." (§ 6257; see *Northern Cal. Police Practices Project v. Craig* (1979) 90 Cal.App.3d 116, 123-124 [153 Cal.Rptr. 173].) " '[W]here nonexempt materials are not inextricably intertwined with exempt materials and are otherwise reasonably segregable therefrom, segregation is required to serve the objective of the [Public Records Act] to make public records available for public inspection and copying unless a particular statute makes them exempt.' " (*American Civil Liberties Union Foundation v. Deukmejian, supra,* 32 Cal.3d at p. 453, fn. 13, citing to *Northern Cal. Police Practices Project v. Craig, supra,* at p. 124.)

The exempt information consists not only of taxpayer names but also "information which might lead the knowledgeable or inquisitive to infer the identity of the individual in question." (*American Civil Liberties Union Foundation v. Deukmejian, supra,* 32 Cal.3d at pp. 449-450.) The Board does not assert the task is impossible, only that it is "impractical" because, so it says, the law and the facts are so inextricably intertwined in (60 percent of) the materials (see fn. 6, *ante*) that editing will "completely eviscerate" the utility of the information to Associated.

This assumes that *all* of the facts involving an application of the tax regulations constitute identifying information. The correctness of this assumption is not facially evident (§ 6255). More to the point the Board's

---

[11]Revenue and Taxation Code section 7056 (*ante,* p. 1182, fn. 4) provides that information obtained by the Board about a retailer's business affairs and operations is protected from public scrutiny. (See *Sav-On Drugs, Inc. v. Superior Court* (1975) 15 Cal.3d 1, 6-7 [123 Cal.Rptr. 283, 538 P.2d 739].) "[T]he purpose of such provisions as [Revenue and Taxation Code] section 7056 is 'to facilitate tax enforcement by encouraging a taxpayer to make full and truthful declarations in his return, without fear that his statements will be revealed or used against him for other purposes.' " (*Id.* at p. 6, quoting *Webb v. Standard Oil Co.* (1957) 49 Cal.2d 509, 513 [319 P.2d 621].) The Public Records Act permits the Board to withhold such confidential information. (§ 6254, subd. (k).)

assistant chief counsel acknowledged that the Board has honored similar requests from Associated. He said the Board did this "until [Associated's] intentions to abuse the system became apparent as the requests asked for successively larger numbers of documents to be perused, reviewed, and 'sanitized' . . . ." In his view, Associated's request is frivolous and vexatious. This tells us that the Board's only legitimate objection to the request is its size.[12]

We have been supplied exemplars of excised records of similar documents the Board has disclosed pursuant to its past practice with confidential information excised. The examples before us do not contain substantial deletions and do not reveal identifying information. In one, for example, there is an extensive analysis why tax counsel for the Board considers that a diet product is not a "food product" as that term is used in Sales and Use Tax Regulation 1602, subdivision (5) (Cal. Code Regs; tit. 18, §1602, subd. (5).) In another, a tax counsel formal ruling addresses the question whether a corporation's distribution of its tangible personal property assets to a trust constitutes a transaction which is exempt from the California sales and use tax. In each case the primary deletion is the name of the taxpayer. The excision of the name leaves a complete and intelligible analysis of a tangible sales tax problem. These exemplars show that it is likely that excision will not destroy the utility of the documents which Associated seeks.

V

*The Burdens of Production*

The burden of showing a request is too onerous lies with the Board. (§ 6255.) It relies on *American Civil Liberties Union Foundation* v. *Deukmejian, supra,* 32 Cal.3d 440, which "reject[ed] the suggestion that in [weighing the benefits and costs of disclosure under section 6255] the courts should ignore any expense and inconvenience involved in segregating nonexempt from exempt information. Section 6255 speaks broadly of the 'public interest,' a phrase which encompasses public concern with the cost and efficiency of government. To refuse to place such items on the section 6255 scales would make it possible for any person requesting information, for any reason or for no particular reason, to impose upon a governmental agency a

---

[12]A genuine dispute about the degree of editing may be resolved at an in camera proceeding at which exemplars of the redacted records may be compared with the originals.

limitless obligation. Such a result would not be in the public interest." (32 Cal.3d at pp. 452-453, fn. omitted.)[13]

The American Civil Liberties Union (ACLU) had sought to inspect and copy certain index cards and computer printouts held by the California Department of Justice. The index cards were compiled by a network of law enforcement departments known as the Law Enforcement Intelligence Unit (LEIU) and listed persons suspected of involvement in organized crime.

The Supreme Court examined the records and concluded that, with respect to the LEIU index cards, the burden of segregating exempt from nonexempt material would be "substantial," because the cards did not indicate which material was confidential, which material might reveal a confidential source or which material might identify the subject of the report, a circumstance which in many instances would require the agency to make further inquiries of the law enforcement department that supplied the information. On the other side of the scale, the court found the utility of disclosure to the ACLU "questionable" and of "marginal and speculative benefit"; the deletion from the cards of confidential information and personal identifiers would reveal at best only certain generalities about the operation of the criminal indexing systems. (*American Civil Liberties Union Foundation* v. *Deukmejian, supra,* 32 Cal.3d at pp. 453-454.)

The court distinguished the Interstate Organized Crime Index printouts, which could be revealed. They presented much less of a burden because the information they contained was derived from public records and was not confidential. Thus the task of segregating exempt material was simply to excise personal identifiers, the burden of which did not clearly outweigh the benefit of disclosure. (*American Civil Liberties Union Foundation, supra,* 32 Cal.3d at p. 454.)

*American Civil Liberties Union Foundation* does not compel nondisclosure in this case. The Supreme Court was careful to observe: "Section 6255 requires the courts to look to 'the facts of the particular case' in balancing the benefits and burdens of disclosure under the [Public Records] Act. Thus our decision against requiring disclosure [of the LEIU cards] is necessarily limited to the facts of this particular case; in another case, with different facts, the balance might tip in favor of disclosure of nonexempt information . . . ." (32 Cal.3d at p. 454, fn. 14.)

---

[13]Compare *Sears* v. *Gottschalk, supra,* 502 F.2d at page 126 (FOIA; "If otherwise locatable, the rule in [the Fourth Circuit] is that equitable considerations of the costs, in time and money, of making records available for examination do not supply an excuse for non-production.").

Here, the public interest in disclosure is substantial, the manifest public interest in the avoidance of secret law and a correlative interest in the disclosure of an agency's working law. On the other side of the equation, the Board overstates the burden of segregating the exempt from the nonexempt material. As noted, the record contains exemplars of similar documents the Board has disclosed in the past with confidential information excised. They show that the primary deletions were the names of the taxpayers. Unlike *American Civil Liberties Union Foundation*, segregation here would not impose a burden on the Board to inquire from numerous outside sources whether information contained on the documents is confidential.

To the extent the Board complains of staff inconvenience and expense, we are given no reason to reject the trial court's finding that the burden is sufficiently alleviated by retaining outside counsel with expertise in these matters to perform the task and by the fact that Associated will pay the attendant costs.[14]

■ The Board asserts there is a risk that confidential material may be inadvertently disclosed despite careful editing. The Board worries that if disclosure is ordered taxpayers will no longer voluntarily comply with the sales and use tax laws for fear their identities and business operations will be revealed. The past practice of the Board and the exemplars of documents provided under that practice show the Board's fears to be unwarranted.
■ Lastly, the Board fears that if this request is allowed, it will be followed by seriatim requests for documents relating to the remaining 96 sales and use tax regulations. As the trial court noted, the propriety of such requests is not before us.

■ Lastly, the Board discounts the public interest in disclosure because Associated is a commercial entity and intends to use the material for commercial purposes. The Public Records Act does not differentiate among those who seek access to public information. It "imposes no limits upon who may seek information or what he may do with it." (*American Civil Liberties Union Foundation* v. *Deukmejian, supra*, 32 Cal.3d at p. 451; see *Black*

---

[14]The Board complains that although these factors may alleviate the burden, they will not eliminate it. There is nothing in the Public Records Act to suggest that a records request must impose *no* burden on the government agency. (See *Northern Cal. Police Practices Project* v. *Craig, supra*, 90 Cal.App.3d at p. 124 ["Undoubtedly, the requirement of segregation casts a tangible burden on governmental agencies and the judiciary. Nothing less will suffice, however, if the underlying legislative policy of the [Public Records Act] favoring disclosure is to be implemented faithfully."].) The Public Records Act contemplates there will be some burden in complying with a records request, the only question being (in the case of nonexempt material) whether the burden is so onerous as to clearly outweigh the public interest in disclosure.

*Panther Party* v. *Kehoe* (1974) 42 Cal.App.3d 645, 656 [117 Cal.Rptr. 106].) What is material is the *public* interest in disclosure, not the private interest of a requesting party; section 6255 does not take into consideration the requesting party's profit motives or needs. (See Comment, *The California Public Records Act: The Public's Right of Access to Governmental Information* (1976) 7 Pacific L.J. 105, 118-119.) Although Associated is a commercial entity it serves the public interest in making available the Board's working law.

The Board's reliance on *Shippen* v. *Department of Motor Vehicles* (1984) 161 Cal.App.3d 1119 [208 Cal.Rptr. 13] for the proposition that the Public Records Act gives less deference to commercial users is misplaced. The only issue in *Shippen* was whether the government agency was overcharging the requesting party for the costs of duplication. We held that, although access to information under the Public Records Act is a fundamental right to which *all* are entitled, "[n]owhere does the [Public Records] Act intimate that access to bulk records by commercial users may not be circumscribed by reasonable conditions regarding format and price." (*Id.* at pp. 1126-1127.) There is no implication in *Shippen* that, because the requesting party intended to use the information for commercial purposes, it was not entitled to access in the first instance.

## VI

### *The Board May Be Required to Prepare a List*

▆▆▆ The Board contends the trial court had no authority to order it to prepare an index of the documents included in Associated's request. Associated responds that the order was for the Board to prepare a "list," not an "index." We can conceive circumstances in which an indexing requirement could involve the exercise of policy discretion and improperly be used to manufacture novel policy determinations in the guise of seeking existing documents. That is not this case. The listing called for is ministerial; there is no practical distinction whether it is called a list or an index and nothing is served by engaging in this word play. We find nothing in the Public Records Act or in the decisional law that prohibits such an order.

*Rosenthal* v. *Hansen, supra,* 34 Cal.App.3d 754 is not authority for the proposition that, under the Public Records Act, a government agency may not be required to prepare a document list. The requesting party had sought certain existing records plus "the amendments, deletions, additions, supplements, updates and all other changes in these materials as such amendments, deletions, additions, supplements, updates and other changes become available." (*Id.* at p. 756.) The trial court ruled, in part, "The California Public

Records Act does not require [the government agency] to provide [the requesting party] with copies of public records not yet in existence." (*Id.* at p. 758.) On appeal, the requesting party limited his request to existing documents (*id.* at p. 757), and we observed, "There is no argument with the [trial court's] conclusion that records not in existence but to be prepared in the future are not required to be furnished as they appear." (*Id.* at p. 758.) Thus the original request for nonexisting documents was mooted by the time the case was heard on appeal. In any event, the request involved in *Rosenthal* significantly differs in that it imposed on the government agency an open-ended, continuing task of enormous proportions; the existing records alone consisted of over 80,000 documents. In contrast, here the preparation of the required index of 2,100 documents is a one-time affair and does not involve an unreasonable amount of effort.

*NLRB* v. *Sears, Roebuck & Co., supra,* 421 U.S. 132 [44 L.Ed.2d 29] is also distinguishable. In that case, involving a request for appeals memoranda, the trial court required the government agency to produce or create explanatory material in those instances in which a memorandum refers only to the "circumstances of the case." The Supreme Court held that the FOIA "does not compel agencies to write opinions in cases in which they would not otherwise be required to do so. It only requires disclosure of certain documents which the law requires the agency to prepare or which the agency has decided for its own reasons to create." (*Id.* at pp. 161-162 [44 L.Ed.2d at p. 53].) In this case the trial court's order does not require the Board to expand upon or supplement the material contained in the requested documents; it calls for the Board to simply list the documents. This is a ministerial task, and the Board's resistance is obstructionist in light of the fact that it has provided Associated with similar lists in the past and that, in fact, appears to routinely maintain subject matter indexes with respect to these types of files.

List preparation correlates with the requirement that records requests reasonably describe identifiable documents. (See §§ 6256, 6257; *ante,* p. 1186 & fn. 9.) ▮▮▮ The identification requirement may not be used by a government agency as a method of withholding records, e.g., by refusing to provide a requesting party with the means by which he may reasonably describe an identifiable document. This puts part of the responsibility for identifying records with the agency itself. (See *National Cable Television Association, Inc.* v. *F.C.C., supra,* 479 F.2d at pp. 190-191 & fn. 17.) The FOIA requires government agencies to maintain and make available for public inspection and copying current indexes that provide identifying information as to material required to be made available to the public. (5 U.S.C. § 552(a)(2).) The index gives the public an adequate basis on which to make

reasonably specific records requests. (*Irons* v. *Schuyler* (D.D.C. 1970) 321 F.Supp. 628, 629, affirmed and remanded on other grounds ((D.C. Cir. 1972) 465 F.2d 608 [151 App.D.C. 23].)[15]

 Although the Public Records Act does not, like the FOIA, require the maintenance of an index of records available for public inspection and copying, it does not prohibit a court from ordering the preparation of a list of the documents which are sought. Providing such a list is consistent with the language and spirit of the Public Records Act. For these reasons the trial court did not abuse its discretion in ordering the Board to prepare a list (index) of the requested documents.

## VII*

### *Collateral Estoppel*

. . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed and the writ is discharged.

Sims, J., and Davis, J., concurred.

Petitioners' application for review by the Supreme Court was denied January 28, 1993.

---

[15]With this in mind, we find it ironic that the Board should complain, in the same breath, of Associated's "patently overbroad request" and then of the order to create a list for Associated's use "in refining its request."

*See footnote 2, *ante*, page 1182.