Filed 10/26/18 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NATIONAL LAWYERS GUILD, SAN FRANCISCO BAY AREA CHAPTER, | A149328 |
| Plaintiff and Respondent, | (Alameda County Super. Ct. No. RG15785743) |
| v. | |
| CITY OF HAYWARD et al., | ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT |
| Defendants and Appellants. | |

THE COURT:

It is ordered that the opinion filed herein on September 28, 2018, be modified as follows:

1. On page 1, in the first sentence of the opinion, the words "writ of administrative mandate" are changed to "writ of mandate" so the first sentence reads as follows:[1]

> This is an appeal from the trial court's decision to grant the petition for writ of mandate of the National Lawyers Guild, San Francisco Bay Area Chapter (Guild), and to issue a writ directing the City of Hayward and its Chief of Police Diane Urban (collectively, City) to refund the Guild for two payments made to cover certain of the City's costs in complying with the Guild's requests for production under the California Public Records Act (Gov. Code, § 6250 et seq.) (CPRA).

---

[1] Footnote 1 remains in place at the end of the first sentence of the opinion, unchanged.

1

2. On page 15, the last full paragraph of the opinion immediately preceding the disposition, beginning "Accordingly, we conclude based on the language of the statute" and ending "computer programming in the form of the Windows Movie Maker software," is modified to read as follows:

> Accordingly, we conclude based on the language of the statute, the legislative history, and policy considerations that the costs allowable under section 6253.9, subdivision (b)(2) include the City's expenses incurred in this case to construct a copy of the police body camera video recordings for disclosure purposes, including the cost of special computer services and programming (e.g., the Windows Movie Maker software) used to extract exempt material from these recordings in order to produce a copy thereof to the Guild.  We thus remand to the trial court to conduct a further evidentiary hearing with respect to precisely which costs, among those billed to the Guild, the City is entitled to recover under this provision.

There is no change in the judgment.

Respondent's petition for rehearing is denied.

Dated:      October 26, 2018                        POLLAK, J.          , Acting P. J.

A149328/*Nat. Lawyers Guild, S.F. Bay Area Ch. v. City of Hayward*

2

<u>A149328/Nat. Lawyers Guild, S.F. Bay Area Ch. v. City of Hayward</u>

Trial Court:   Superior Court of Alameda County

Trial Judge:   Evelio Grillo, J.

Counsel:       Michael S. Lawson, City Attorney (Hayward) and Justin Nishioka, Assistant City Attorney, for Appellants.

Law Offices of Amitai Schwartz and Amitai Schwartz; American Civil Liberties Union Foundation of Northern California, Inc. and Alan L. Schlosser for Respondent.

Katie Townsend, Bruce D. Brown and Caitlin Vogus for Reporters Committee for Freedom of the Press as Amicus Curiae on behalf of Respondent.

Jim Ewert and Nikki Moore for California News Publishers Association as Amicus Curiae on behalf of Respondent.

Terry Francke for Californians Aware as Amicus Curiae on behalf of Respondent.

Judy Alexander; Davis Wright Tremaine and Thomas Burke for The Center for Investigative Reporting as Amicus Curiae on behalf of Respondent.

David Snyder for First Amendment Coalition as Amicus Curiae on behalf of Respondent.

Barbara W. Wall for Gannett Co., Inc. as Amicus Curiae on behalf of Respondent.

Jeffrey Glasser for Los Angeles Times, LLC and The San Diego Union-Tribune, LLC as Amici Curiae on behalf of Respondent.

Juan Cornejo for The McClatchy Company as Amicus Curiae on behalf of Respondent.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NATIONAL LAWYERS GUILD, SAN FRANCISCO BAY AREA CHAPTER,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CITY OF HAYWARD et al.,<br><br>        Defendants and Appellants. | A149328<br><br>(Alameda County<br>Super. Ct. No. RG15785743) |

This is an appeal from the trial court's decision to grant the petition for writ of administrative mandate of the National Lawyers Guild, San Francisco Bay Area Chapter (Guild), and to issue a writ directing the City of Hayward and its Chief of Police Diane Urban (collectively, City) to refund the Guild for two payments made to cover certain of the City's costs in complying with the Guild's requests for production under the California Public Records Act (Gov. Code, § 6250 et seq.) (CPRA).[2]  Concluding the trial court misinterpreted the applicable provision of the CPRA—section 6253.9, subdivision (b)—we reverse.

**FACTUAL AND PROCEDURAL BACKGROUND**

The relevant facts are not in dispute.  The Guild is a not-for-profit organization seeking to unite lawyers and law students with the aim to promote justice in the administration of law, civil rights and racial equality.  On January 27, 2015, the Guild served on the City requests for 11 categories of public records (paper and electronic)

_____

[2] Unless otherwise stated herein, all statutory citations are to the Government Code.

1

relating to a demonstration held in Berkeley in December 2014 to protest recent incidents of police violence toward private citizens, at which the Hayward Police Department (Department) provided security.

In response to these requests, the City provided the Guild with copies of well over 200 public records. Among the hundreds of such records, the City produced over six hours of police body camera videos from the Berkeley demonstration, which had been redacted to exclude material exempt from disclosure under the CPRA on privacy or security grounds.[3] In preparing for this production, City employees, including IT manager Nathaniel Roush and the Department's records administrator, Adam Perez, spent approximately 170 hours identifying, compiling, reviewing and redacting exempt portions from these videos, which were among thousands of hours of police videos stored on the Internet and accessible only by certain personnel through a password-protected external website.[4] According to evidence submitted by the City, Roush, in particular, performed 45 database searches that yielded 141 videos with, collectively, about 90 hours of footage. Then, after initially reviewing the videos for accuracy, Roush downloaded the videos from the cloud and copied them. However, in order to review these videos for exempt material and to make necessary redactions, Perez required the use of specialized third party software with audio/video editing capabilities. For this task, which the City had not previously undertaken, Perez researched several different software programs before selecting Windows Movie Maker as the most suitable program for performing these functions.

---

[3] The Guild did not expressly request copies of these police body camera videos; however, the City interpreted the Guild's requests to include these videos and, thus, included copies of them in redacted form with its production. On appeal, there is no dispute these videos qualify as public records subject to disclosure under the CPRA.

[4] The Department instituted its "body-worn camera" program in 2014 and typically generates about 1,000 hours of videos from these cameras monthly. The Department's standard operating procedure under this program includes having individual officers upload the videos from their cameras in MP4 format for storage via a docking station upon their return to the station after their shifts.

Realizing the volume of work required to produce the body camera videos, the City conversed with the Guild with the goal of narrowing its requests. In March 2015, the Guild agreed "for now" to accept approximately six hours of video taken at the Berkeley demonstration.

On May 18, 2015, after discussions with the Guild regarding the City's costs in responding to the requests for body camera videos, the City sent the Guild an invoice for $2,939.58 seeking reimbursement for certain costs incurred by its employees in copying the videos for production (including the "tedious" task of redacting them).[5] The City reached this invoice total by determining Roush spent 4.9 hours of his time preparing the videos for production (excluding his work burning the videos onto DVD's and then preserving the DVD's as potential evidence). It determined Perez, in turn, spent 35.3 hours engaged in tasks including editing the videos with the Windows Movie Maker software (but excluding his time collecting and compiling the videos), reviewing over 90 hours of videos, and selecting, by trial and error, the Windows Movie Maker software program. The City also agreed to make the redacted videos available for viewing free of charge.

The Guild thereafter paid this invoice under protest, and received copies of roughly 232 minutes of police body camera videos, consisting of seven separate videos in MP4 format. Shortly thereafter, the Guild made a request for a second set of videos encompassing recordings from 24 named officers, plus other unnamed officers, on duty at

---

[5] Perez described the multi-phase video editing process, which alone took about 35 hours, as follows. First, all responsive videos were reviewed, and portions within them that were exempt from disclosure were noted by video start time and end time. Second, the audio from each exempt portion was extracted and placed into a separate audio file in MP3 format. Third, all exempt audio and video portions identified were redacted using the Windows Movie Maker software. To do this, the audio/video portions were uploaded, edited on a " 'storyboard,' " and then edited separately (video followed by audio) "using the 'split' function . . . to separate specific sections of the video . . . ." Finally, Perez listened to the videos to ensure no content subject to disclosure was "inadvertently" edited out, before carefully syncing the video and audio to correspond accurately.

3

the Berkeley demonstration during three specific time periods.  The City promptly complied with this request, permitting the Guild to view the redacted videos free of charge and offering to produce copies of these videos for a charge of $308.89 to cover certain of its production costs.

Rather than pay this amount, the Guild brought this action in the form of a Verified Petition for Declaratory and Injunctive Relief and Writ of Mandate (petition), seeking relief in the form of a refund for its payment of $2,939.58 for the first set of videos and release of the second set of videos for "[no] more than the direct costs of production."  About two weeks later, however, the Guild paid the second invoice under protest and received the second set of videos (two videos in MP4 format totaling 65 minutes), while proceeding with this action.

On June 24, 2016, following issuance of a tentative order and contested hearing, the trial court ruled in favor of the Guild, concluding that, as a matter of law, section 6253, subdivision (b) and section 6253.9, subdivision (a)(2) do not permit the City to charge a CPRA requester for costs incurred in making a redacted version of an existing public record.  After the Guild's request for reconsideration was denied, the City filed this timely appeal.

## DISCUSSION

The only issue before us is one of statutory construction, which is subject to de novo review.  (*Fredericks v. Superior Court* (2015) 233 Cal.App.4th 209, 223 (*Fredericks*).)  Is the City entitled under section 6253.9, subdivision (b) (section 6253.9(b)) to recoup from the Guild certain costs it incurred to edit and redact exempt material on otherwise disclosable police department body camera videos prior to the electronic public records' production?

To begin, we consider the statute, section 6253.9(b), in proper context.  California citizens have a protected right of access to information concerning the conduct of the state's business and, in particular, the conduct of its police force.  (Cal. Const., art. I, § 3, subd. (b)(1) ["The people have the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of

4

public officials and agencies shall be open to public scrutiny"]; § 6250; see *Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 297 [" 'In order to maintain trust in its police department, the public must be kept fully informed of the activities of its peace officers' "].) This right extends to both paper and electronic records in the public domain. The Legislature thus broadly defines "public records" to include "any writing containing information relating to the conduct of the public's business . . . regardless of physical form or characteristics," and defines "writing" as "any handwriting, typewriting, printing, photostating, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored." (§ 6252, subds. (e), (g); see *City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 617 (*City of San Jose*).)

At the same time, "public access to information must sometimes yield to personal privacy interests. When enacting [the] CPRA, the Legislature was mindful of the right to privacy (§ 6250), and set out multiple exemptions designed to protect that right. ([Citation]; see § 6254.) Similarly, while the Constitution provides for public access, it does not supersede or modify existing privacy rights. (Cal. Const., art. I, § 3, subd. (b)(3).)" (*City of San Jose*, *supra*, 2 Cal.5th at pp. 615–616.) Accordingly, while, as a general matter, public records " 'must be disclosed unless a statutory exception is shown,' " section 6254 sets out a variety of exemptions, " 'many of which are designed to protect individual privacy.' " (*Id.* at p. 616.)

Relevant here, "if only part of a record is exempt, the agency is required to produce the remainder, if segregable. (§ 6253, subd. (a).) In other words, 'the fact that a public record may contain some confidential information does not justify withholding the entire document.' (*State Bd. of Equalization v. Superior Court* [(1992)] 10 Cal.App.4th [1177,] 1187; [citation].) 'The burden of segregating exempt from nonexempt materials, however, remains one of the considerations which the court can take into account in

5

determining whether the public interest favors disclosure under section 6255.'
[Citation.]" (*County of Santa Clara v. Superior Court* (2009) 170 Cal.App.4th 1301,
1321 (*County of Santa Clara*).)  The CPRA thus includes a "catchall" provision—
section 6255, subdivision (a)—that exempts disclosure if " 'the public interest served by
not disclosing the record clearly outweighs the public interest served by disclosure.' "[6]
(*City of San Jose*, *supra*, 2 Cal.5th at p. 616.)

This statutory framework and the public policies supporting it influence our
application of the otherwise well-established tenets of statutory construction.  " 'When
we interpret a statute, "[o]ur fundamental task . . . is to determine the Legislature's intent
so as to effectuate the law's purpose.  We first examine the statutory language, giving it a
plain and commonsense meaning.  We do not examine that language in isolation, but in
the context of the statutory framework as a whole in order to determine its scope and
purpose and to harmonize the various parts of the enactment.  If the language is clear,
courts must generally follow its plain meaning unless a literal interpretation would result
in absurd consequences the Legislature did not intend.  If the statutory language permits
more than one reasonable interpretation, courts may consider other aids, such as the
statute's purpose, legislative history, and public policy." [Citation.]  "Furthermore, we
consider portions of a statute in the context of the entire statute and the statutory scheme
of which it is a part, giving significance to every word, phrase, sentence, and part of an
act in pursuance of the legislative purpose." ' [Citation.] [¶] In CPRA cases, this standard
approach to statutory interpretation is augmented by a constitutional imperative.
[Citation.]  Proposition 59 amended the Constitution to provide 'A statute, court rule, or
other authority, including those in effect on the effective date of this subdivision, shall be

---

[6] The City raised the additional argument below under section 6255 that the
Guild's request for disclosure of the police body camera video recordings was too
onerous due to the costs required to review and redact material in the recordings to
protect privacy and other legitimate concerns. (See *Fredericks*, *supra*, 233 Cal.App.4th
at pp. 237–238; *State Bd. of Equalization v. Superior Court*, *supra*, 10 Cal.App.4th at
pp. 1188–1189.) However, the trial court found against the City on this issue, and the
City has not appealed this ruling.

*broadly* construed if it furthers the people's right of access, and *narrowly* construed if it limits the right of access.' (Cal. Const., art. I, § 3, subd. (b)(2), italics added.) ' "Given the strong public policy of the people's right to information concerning the people's business (Gov. Code, § 6250), and the constitutional mandate to construe statutes limiting the right of access narrowly (Cal. Const., art. I, § 3, subd. (b)(2)), 'all public records are subject to disclosure unless the Legislature has *expressly* provided to the contrary.' " ' [Citation.]" (*City of San Jose*, *supra*, 2 Cal.5th at pp. 616–617.)

Returning to the matter at hand, the parties agree the electronic records sought by the Guild under the CPRA, including the police body camera videos, qualify as "public records" subject to disclosure under section 6252 either in full or in part. The dispute concerns which party must bear certain costs incurred in connection with the City's production of these records. Two provisions of the CPRA are implicated—section 6253, originally enacted in 1998 (Stats. 1998, ch. 620 § 5, pp. 4120–4121 (Sen. Bill. No. 143)), and section 6253.9, a relatively new addition to the CPRA added in 2000 to respond to the growing tendency of public entities to maintain records in electronic format rather than paper format (Stats. 2000, ch. 982 § 2, p. 7142 (Assem. Bill No. 2799)). (See *Fredericks*, *supra*, 233 Cal.App.4th at p. 236 [section 6253.9(b) was added "to allow allocation of costs for production of information in an electronic format"].)

More specifically, section 6253, subdivision (b) provides in relevant part that, subject to any applicable exemptions, a public agency has the duty to respond to "a request for a copy of records that reasonably describes an identifiable record or records" by making said records available "upon payment of fees covering direct costs of duplication, or a statutory fee if applicable." (See *Fredericks*, *supra*, 233 Cal.App.4th at p. 236 ["Generally, the ancillary costs of retrieving, inspecting, and handling material to be prepared for disclosure may not be charged to the requestor"]; *County of Santa Clara*, *supra*, 170 Cal.App.4th at p. 1336 [when paper records are sought, "direct cost has been interpreted to cover the 'cost of running the copy machine, and conceivably also the expense of the person operating it' while excluding any charge for 'the ancillary tasks necessarily associated with the retrieval, inspection and handling of the file from which

7

the copy is extracted' "].)  In addition, section 6253 affords an agency, upon its receipt of a CPRA request, 10 days to determine whether the request, in whole or in part, seeks copies of disclosable public records in the possession of the agency.  This time period may be extended by written notice in "unusual circumstances," which include the circumstance, among others, that proper processing of the particular request reasonably calls forth the "need to compile data, to write programming language or a computer program, or to construct a computer report to extract data."  (§ 6253, subd. (c)(4) [added by Stats. 2000, ch. 982, § 1, pp. 7140–7141].)

Section 6253.9(b), in turn, provides that, when electronic (rather than paper) records are requested, "an agency [can] recover specified ancillary costs in either of two cases:  (1) when it must 'produce a copy of an electronic record' between 'regularly scheduled intervals' of production, or (2) when compliance with the request for an electronic record 'would require data compilation, extraction, or programming to produce the record.'  (§ 6253.9, subd. (b)(1)–(2); [citation].)  Under those circumstances, the agency may charge '*the cost to construct a record, and the cost of programming and computer services necessary to produce a copy of the record . . . .*'  (§ 6253.9, subd. (b).)"  (*County of Santa Clara*, *supra*, 170 Cal.App.4th at p. 1336, italics added; accord, 88 Ops.Cal.Atty.Gen. 153, 164 (2005) [whether under section 6253.9, subdivision (b)(1) or (b)(2), "the fee may not include expenses associated with the [public entity's] initial gathering of the information, or with initial conversion of the information into an electronic format, or with maintaining the information"].)

Here, the City relies on section 6253.9, subdivision (b)(2) to argue the Guild should bear the costs incurred by the City to acquire and employ a special computer software program to redact or "extract[]" from the body camera video recordings material exempt from disclosure on privacy or other statutorily recognized grounds.  In so arguing, the City reasons that "[t]aking exempt material out of a digital video file in order to allow a record to be produced is a form of extraction . . . [such that its] efforts may be invoiced to a requestor as authorized by §6253.9(b)(2)."

The Guild disagrees, arguing that "extraction," as used in the statute, is limited to situations where " '[t]he request would require data compilation, extraction, or programming *to produce the record*. . . .  Nothing in the statutory language indicates that the term 'extract' means to reduce a record by taking out information that is exempt from public disclosure."  The trial court accepted this argument, concluding "the phrase 'data compilation, extraction, or programming to produce the record' [§§ 6253, subd. (c)(4), 6253.9, subd. (b)(2)] does not refer to making a redacted version of an existing public record."

Thus, at bottom, the parties' dispute over what costs are recoverable by a public agency under section 6253.9, subdivision (b)(2) hinges on the statutory definition of the term "extraction."  We therefore begin with the well-established principle that statutes are to be interpreted "according to the usual, ordinary import of the language employed in framing them."  (*In re Alpine* (1928) 203 Cal. 731, 737.)  And the word "extract," as the parties have agreed, usually and ordinarily means to remove or to take out.  (See Merriam-Webster Dict. <https://www.merriam-webster.com/dictionary/extract> [as of Sept. 21, 2018] ["to remove (something) by pulling it out or cutting it out"].)  At first glance, "taking out" appears to be precisely the action taken by the City's employees in this case, causing the City to incur the costs for which it now seeks reimbursement from the Guild—they removed or took out exempt material from the body camera video recordings in order to produce the otherwise disclosable recordings.  The Guild, however, contends this action by the City was "redaction"—distinct from "extraction"—which means taking exempt material out of the original record in order to produce the original record, "but with empty holes[.]"  "Extraction," the Guild insists, means "pulling data out of an electronic database in order to generate a record" in order to meet a CPRA request.  Because this did not occur here, the Guild continues, the City may recover only the direct cost of duplicating the records.

Accepting the Guild's position, the trial court reasoned (when declining to award the City any additional costs for preparing and redacting the videos for production) that "section[s] 6253.9(b) and 6263.9(b)(2) [*sic*] together strongly suggest[] that a public

9

agency may require cost reimbursement where the 'data compilation, extraction, or programming' is necessary . . . 'to construct a record,' but it does not suggest that when a request is made under the CPRA for an *existing* public record, . . . the agency may charge for information or data *removed* from that record."  (Second italics added.)

Having considered both positions, we find no clear answer in the statutory text to the parties' dispute.  On the one hand, the common meaning of "extraction" appears to extend beyond redacting privileged or otherwise nondisclosable data or information to "removing" or "taking out" *any* data or information.  As such, we question, if the Legislature intended "extraction" in section 6253.9, subdivision (b)(2) to have a restricted meaning—to refer to extractions of "data" for the particular purpose of "constructing" or "generating" a new record but not to redactions of exempt data or information from an existing record—why the Legislature would not have made its intent more explicit.[7]

In any event, we are ultimately left to conclude that it is unclear from the statutory language whether "extraction" was intended by the Legislature to include any act of removing or taking out material from an electronic record in anticipation of its production (including exempt material) or, as the Guild insists, only removing or taking out "data" for the purpose of constructing or generating a previously nonexistent record.  And in light of this ambiguity, we turn to extrinsic sources such as the legislative history to help decipher section 6253.9(b)'s meaning.  (*Fredericks*, *supra*, 233 Cal.App.4th at p. 230 [ambiguity exists where statutory language is susceptible of more than one reasonable interpretation]; *County of Santa Clara*, *supra*, 170 Cal.App.4th at pp. 1333–1334 [" '[where] statutory terms are ambiguous, we may examine extrinsic sources, including . . . the legislative history' "].)

---

[7] "Data" ordinarily means "facts or information used usually to calculate, analyze, or plan something" or "information in digital form that can be transmitted or processed." (Merriam-Webster Dict. <https://www.merriam-webster.com/dictionary/data> [as of Sept. 21, 2018].)  Accordingly, we see no basis for concluding that extracting "data" from an electronic file is distinct from extracting "information" from such file.

10

In this legislative history, which we judicially notice for purposes of this appeal, we find several documents supporting the City's position that section 6253.9(b) was intended to permit a local government to recover costs in circumstances, like this, where electronic public records require special computer programming to segregate disclosable from nondisclosable material in order to produce a copy of the record to the requester. To begin with, this history reveals that, when the sponsor of Assembly Bill No. 2799 first introduced the bill in February 2000 in recognition of the increasing tendency of public agencies to maintain records in electronic format, the draft bill continued the statutory limitation on recovery of costs by a public agency under the CPRA to "direct costs of duplication." (Assem. Bill No. 2799 (1999–2000 Reg. Sess.) § 1, as introduced Feb. 28, 2000 (AB 2799); Cal. Bus., Transportation & Housing Agency, Dept. of Fin. Insts., Enrolled Bill Rep. of AB 2799 as amended July 6, 2000, p. 1.) The draft bill did *not* include the language, now found in section 6253.9, subdivision (b)(2), that the requester shall bear the costs of producing an electronic record, including the cost of programming and computer services necessary to produce a copy of the record where (inter alia) the "request would require data compilation, extraction, or programming to produce the record." Several groups opposed this version of the bill on the precise ground that redacting or segregating nondisclosable electronic records from disclosable electronic records would be time-consuming and costly. Specifically, as explained in one analysis of AB 2799, groups opposing the bill were concerned "that separating disclosable electronic records from nondisclosable electronic records could be a costly and time-consuming process" and "that this bill does not contain a provision authorizing agencies to charge fees covering the cost of preparing the electronic record for public release when such preparation is necessary." (Assem. Com. on Governmental Organization, 3d reading analysis of AB 2799 as amended May 23, 2000, p. 2.)

Similarly, the fiscal comment section of the Assembly Republican Caucus's bill analysis noted: "Public entities may keep large amounts of information in a database, some of which may not be for public consumption. Public entities may then have to purge the database and eliminate nondiscloseable records, which could be a costly

11

endeavor."[8]  (Assem. Republican Caucus, analysis of AB 2799 as amended May 23, 2000, p. 1.)

Responding to this opposition, the current language of section 6253.9, subdivision (b)(2) was added to the draft bill in June 2000, which was then approved by the Senate in July and by the Assembly in August.[9]  (Sen. Amend. to AB 2799 June 22, 2000; AB 2799, 2 Assem. Final Hist. (1999–2000 Reg. Sess.) p. 1984; see General Counsel Thomas W. Newton, Cal. Newspaper Publishers Assn., letter to Gray Davis, Sept. 8, 2000, p. 2 ["AB 2799 was amended on June 22, to ensure the bill would not place new burdens on state or local agencies.  Specifically, the bill was amended to require *the requester to bear the cost* of producing a copy of an electronically held record . . . .  This provision guarantees the costs associated with any extra effort that

---

[8] Among those opposing the bill on this ground was the San Bernardino County Sheriff's Department, which wrote to AB 2799's sponsor that "[l]aw enforcement records can and do at times contain sensitive business and personal data acquired during a criminal investigation" and that, among other concerns, the bill, as amended April 27, 2000, "fails to address the actual cost to the public of redacting an electronic database," including the cost of reviewing "each record . . . individually.  All of the costs for personnel to review the database are not currently reimbursable . . . ."  (Lt. Paul R. Curry, San Bernardino County Sheriff's Dept., letter to Assem. member Kevin Shelley, May 3, 2000.)  Similarly, the County of Los Angeles voiced opposition to AB 2799, as amended April 27, 2000, in a letter to the Assembly floor, explaining "the Auditor-Controller reports that Countywide time keeping systems contain data that would require special programming to provide information without jeopardizing employee privacy. [¶] The Audit Division utilizes special proprietary software that cannot be redacted in its original electronic format.  The electronic format proposal will increase substantially the cost of legal review, redaction and special programming. [¶] Because of the potential costs associated with its implementation, I urge your 'NO' vote on Assembly Bill 2799." (Principal Deputy County Counsel Steve Zehner, County of Los Angeles, assembly floor letter, May 22, 2000.)

[9] As noted on page 2 of the bill analysis for AB 2799 prepared by the Senate Committee on Judiciary in May 2000, shortly before the amended bill was released, the sponsor "[was] working with the opposition closely to address their concerns.  Amendments may be introduced to address the issue of the cost and feasibility of redacting public information.  If necessary, the amendments will be submitted to committee no later than June 19, 2000[.]"

12

might be required to make an electronic public record available shall be borne by the requester, not the state or local agency"].)

In this amended form, most opposition to AB 2799 was withdrawn. For example, the California Newspaper Publishers Association (CNPA), a supporter of the bill, wrote to the Governor to urge his support, advising that the bill in its amended form would not place "new burdens" on state and local agencies. And pointing to the newly added provision that ultimately became section 6253.9, subdivision (b)(2), the CNPA observed: "This provision guarantees the costs associated with any extra effort that might be required to make an electronic public record available shall be borne by the requester, not the state or local agency." (General Counsel Thomas W. Newton, CNPA, letter to Gray Davis, Sept. 8, 2000, p. 2.)

Also telling, the California Association of Clerks and Election Officials (CACEO) initially opposed the bill due to its "understand[ing] that it is the intent of the sponsor that [recoverable] costs *not* include costs associated with any minor programming that may be required to comply with a request made pursuant to this section of the bill and costs associated with redaction of any information that is exempted, or prohibited, from disclosure by other sections of law." (Co-chair Violet Varona-Lukens, CACEO, letter to Assem. member Carole Migden, May 11, 2000, p. 1.) However, the CACEO dropped its opposition in light of the June 22, 2000 amendment, writing to the bill's sponsor the day before the amendment passed that "[AB 2799], as proposed amended, now addresses the costs incurred by public agencies in providing copies of electronic records under circumstances now described in the bill [to wit, the language of section 6253.9(b)]." (Co-chair Violet Varona-Lukens, CACEO, letter to Assem. member Carole Migden, June 21, 2000.)

Below, the trial court found the "apparent legislative intent of section 6253.9 was to address issues particular to information in electronic format 'relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency.' (Government Code 6252(e).) There is, however, no indication [apparent to the trial court] that the legislature intended to permit a public agency to characterize its redactions

13

of electronic documents as 'extractions' and thereby recover its costs of redacting exempt information, but not to permit the public agency to recover its costs of redacting exempt information from paper public records if the agency performs the redaction with a black felt marker."

Our review of the legislative history, as described above, leads us to a different conclusion. Specifically, we conclude based on these documents that lawmakers were in fact aware the cost of redacting exempt information from electronic records would in many cases exceed the cost of redacting such information from paper records. For this reason (and perhaps others), lawmakers drafted section 6253.9(b) to expand the circumstances under which a public agency could be reimbursed by a CPRA requester to include, among others, the circumstance present here wherein the agency must incur costs to acquire and utilize special computer programming (e.g., the Windows Movie Maker software) to extract exempt material from otherwise disclosable electronic public records.[10] (See *Fredericks*, *supra*, 233 Cal.App.4th at p. 238 [where disclosures "would require generation, compilation and redaction of information from confidential electronic records, then section 6253.9, subdivision (b) may allow the court to condition disclosure upon an additional imposition of fees and costs, over and above the direct costs of duplication . . . . Section 6253.9, subdivision (b) contemplates that the trial court will make a determination about the reasonableness of any fiscal burdens that would be placed on the [agency] from the requested disclosures"].)

---

[10] We find the Guild's reliance on *Sierra Club v. Superior Court* (2013) 57 Cal.4th 157 to be misplaced. There, the California Supreme Court found the legislative history relied upon by the parties to interpret a particular phrase in the statute unhelpful because it was not clear from the history that the objective of an authoring legislator was known to, much less accepted by, the Legislature as a whole. (*Id.* at p. 173.) However, there, the Supreme Court was considering section 6254.9, not section 6253.9, and, more specifically, "whether the Legislature intended the term 'computer mapping systems' to exclude both mapping software and parcel data in a system-compatible format from the definition of a public record, or to remove all 'computer readable data bases' from the ambit of the exclusion." (*Id.* at p. 174.) This statutory language is not our concern.

14

Accordingly, we conclude based on the language of the statute, the legislative history, and policy considerations that the costs allowable under section 6253.9, subdivision (b)(2) include the City's actual expenditures to produce a copy of the police body camera video recordings, including the cost of extracting exempt material from these video recordings with the aid of special computer programming in the form of the Windows Movie Maker software.

## DISPOSITION

The trial court's judgment is reversed.

_____
Jenkins, J.

We concur:


_____
Siggins, P. J.


_____
Pollak, J.


A149328/*Nat. Lawyers Guild, S.F. Bay Area Ch. v. City of Hayward*

16

A149328/Nat. Lawyers Guild, S.F. Bay Area Ch. v. City of Hayward

Trial Court:   Superior Court of Alameda County

Trial Judge:   Evelio Grillo, J.

Counsel:       Michael S. Lawson, City Attorney (Hayward) and Justin Nishioka, Assistant City Attorney, for Appellants.

Law Offices of Amitai Schwartz and Amitai Schwartz; American Civil Liberties Union Foundation of Northern California, Inc. and Alan L. Schlosser for Respondent.

Katie Townsend, Bruce D. Brown and Caitlin Vogus for Reporters Committee for Freedom of the Press as Amicus Curiae on behalf of Respondent.

Jim Ewert and Nikki Moore for California News Publishers Association as Amicus Curiae on behalf of Respondent.

Terry Francke for Californians Aware as Amicus Curiae on behalf of Respondent.

Judy Alexander; Davis Wright Tremaine and Thomas Burke for The Center for Investigative Reporting as Amicus Curiae on behalf of Respondent.

David Snyder for First Amendment Coalition as Amicus Curiae on behalf of Respondent.

Barbara W. Wall for Gannett Co., Inc. as Amicus Curiae on behalf of Respondent.

Jeffrey Glasser for Los Angeles Times, LLC and The San Diego Union-Tribune, LLC as Amici Curiae on behalf of Respondent.

Juan Cornejo for The McClatchy Company as Amicus Curiae on behalf of Respondent.

17